**The GOVERNMENT OF the TERRITORY OF GUAM, et al., Appellees,**

v.

**SEA–LAND SERVICE, INC. and Sea–Land Motor Freight, Inc., Appellants.**

**No. 91–5121.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 20, 1992.

Decided March 24, 1992.

C. Jonathan Benner, Washington, D.C., with whom Charles L. Coleman, III, San Francisco, Cal., and Robert S. Zuckerman, Edison, N.J., were on the brief, for appellants.

Barry J. Israel, with whom Will E. Leonard, Linda P. Reppert, Mark P. Lindberg, Washington, D.C., Michael J. Wahoske and David R. Abrams, Minneapolis, Minn., were on the brief, for appellees.

Before: WALD, EDWARDS and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This appeal raises a question analogous to the fabled conundrum, "Which came

first, the chicken or the egg?" In December 1989, the appellees, including the Government of the Territory of Guam, Pacific International Co., Town House Department Stores, Micronesian Brokers, Inc. and Tucor Services, Inc. (collectively "Guam"), filed an administrative complaint with the Federal Maritime Commission ("FMC") against Sea–Land Service, Inc. and Sea–Land Motor Freight, Inc., ("Sea–Land"). In pursuit of this administrative action, Guam requested discovery into Sea–Land's post–1989 shipping activities. A subpoena was issued by the presiding ALJ granting discovery, but Sea–Land refused to comply, arguing that the FMC lacked jurisdiction over the post–1989 portion of the complaint.

Guam then filed an action in District Court and secured an enforcement order against Sea–Land. After both the District Court and this court denied requests for stays of discovery, Sea–Land commenced to comply with the discovery requests. At the time of oral argument before this panel, the parties advised the court that much but not all of the discovery sought had been satisfied; Sea–Land's counsel also made it clear that his client was still seeking to block further discovery and to secure a return of any documents that had been released pursuant to discovery. Thus, although Guam suggests otherwise, the case on appeal is not moot.

The only real issue before this court is whether the Federal Maritime Commission has jurisdiction to issue discovery orders for the purpose of determining whether it may properly exercise jurisdiction over Guam's complaint. We find that it does and therefore affirm the judgment of the District Court.

## I. BACKGROUND

Sea–Land is an ocean common carrier operating between the United States and Guam. Prior to June 1989, Sea–Land operated pursuant to tariffs on file with the FMC; in June 1989, Sea–Land revoked its FMC tariffs and filed instead with the Interstate Commerce Commission ("ICC"). The FMC and the ICC have separate but dovetailing spheres of regulation. Under the Shipping Act of 1916, common carriers transporting goods port-to-port in the interstate commerce of the United States are regulated by the FMC. 46 U.S.C. app. § 801 (1988). Subject to some statutory exceptions, common carriers transporting over intermodal routes, *e.g.*, rail and water or pipeline and water, fall within the regulatory domain of the ICC. *See* Interstate Commerce Act, 49 U.S.C. § 10501 (1988). Believing that Sea–Land, both before and after June 1989, operated port-to-port on certain contested routes, Guam filed a rate complaint with the FMC, which in turn referred the case to an Administrative Law Judge ("ALJ").

In support of its complaint, Guam sought discovery into Sea–Land's pre- and post-1989 shipping activities. Sea–Land resisted any discovery relating to periods that post-dated its 1989 tariff filings with the ICC. Sea–Land argued that the FMC lacked jurisdiction over the ICC-tariffed activities, and sought dismissal of that portion of the complaint. In December 1990 and January 1991, the ALJ ordered Sea–Land to comply with Guam's discovery requests and issued a subpoena duces tecum requiring certain Sea–Land employees to submit to deposition and compelling the production of specified documents. Sea–Land requested a protective order which the ALJ denied in February 1991. Sea–Land thereafter continued to resist discovery.

Guam then petitioned the District Court for an enforcement order.[1] Finding that the ALJ's discovery orders were duly made and issued, and that the discovery was

---

1. In pursuing this action, Guam relied on the Shipping Act of 1916, pursuant to which it is authorized to seek an enforcement order in District Court. The applicable portion of the statute reads as follows:

    In case of violation of any order of the Federal Maritime Commission under this chapter, the Commission, or any party injured by such violation, or the Attorney General, may apply to a district court having jurisdiction of the parties; and if, after hearing, the court determines that the order was regularly made and duly issued, it shall enforce obedience thereto by a writ of injunction or other proper process, mandatory or otherwise.

    46 U.S.C. app. § 828 (1988).

necessary to determine the FMC's jurisdiction, the trial judge ordered Sea–Land to comply with Guam's discovery requests. *Guam v. Sea–Land Serv., Inc.*, Misc. No. 91–0034 (D.D.C. March 20, 1991).

On March 22, 1991, the ALJ denied Sea–Land's motion to dismiss. The ALJ explained that Sea–Land's refusal to provide the pertinent discovery made it impossible to determine whether the FMC had jurisdiction over Guam's complaint. Unhappy with this result, Sea–Land sought first from the District Court and then from this court a stay of the discovery. Both motions were denied. Subsequently, Sea–Land began to comply with the discovery request and filed this appeal of the enforcement order.

On appeal, Sea–Land contends that the FMC lacks jurisdiction over the post–1989 portion of the complaint, and, therefore, it is without authority to order discovery with respect to periods that post-date its 1989 tariff filings with the ICC. At the time of this appeal, all depositions but one had been completed and production of the documents was underway. Guam argues that Sea–Land's substantial compliance with the discovery requests renders this appeal moot.[2] Sea–Land contends that the case is not moot because not all discovery has been completed and, in addition, Sea–Land seeks return of any materials heretofore released under compulsion of discovery.

## II. Analysis

### A. Mootness

■ We first address and reject Guam's contention that this appeal is moot. It is true that once a party has obtained all the discovery it sought, any prior discovery disputes are moot. *See Office of Thrift Supervision v. Dobbs*, 931 F.2d 956, 958 (D.C.Cir.1991). Here, however, Guam concedes that there has been only partial compliance with the discovery orders: one deposition remains to be taken and a number of documents have yet to be produced. Therefore, a live controversy remains to be resolved.

■ Furthermore, even if Guam agreed to forego receipt of the remaining deposition and documents, the controversy remains live because Sea–Land has demanded the return of the documents already released pursuant to discovery. A party may challenge a subpoena following compliance with an enforcement order when the party seeks the return of the documents it had supplied pursuant to the subpoena duces tecum. *Id.* at 958 (case not moot if documents still possessed by other party); *Federal Trade Comm'n v. Ernstthal*, 607 F.2d 488, 489 (D.C.Cir.1979) (right to return of documents creates live controversy). Because Guam remains in possession of Sea–Land's documents, the case presents a live controversy.[3]

### B. The Enforceability of an Administrative Subpoena

Sea–Land claims that the ALJ acted without authority in issuing the challenged discovery orders and that the District Court had no basis upon which to enforce

2. On December 5, 1991, the ICC and FMC together released a Joint Policy Statement intended to prevent future disputes of this nature. *See* ICC and FMC Joint Policy Statement (December 5, 1991). The agencies clarified their division of regulatory authority; "[t]he nature of the operations performed should dictate where the tariff ... will be filed, and the agency at which a particular tariff is filed should be the one at which complaints or other regulatory proceedings will be conducted." *Id.* at 3. There is no real question that this Policy Statement has no application in this case because of the agencies' clear statement that the policy is prospective only. *Id.* at 4. Accordingly, we express no opinion as to the validity of this policy or its effect on future jurisdictional conflicts.

3. We note that the Supreme Court recently granted certiorari in *Church of Scientology v. United States*, —— U.S. ——, 112 S.Ct. 1471, 117 L.Ed.2d 615 (1992), to decide whether "petitioner's appeal [was] moot following compliance by disinterested third party with IRS summons enforcement order, although effectual relief remained available to petitioner through return of documents and prohibition on government future use." Because discovery is not yet complete, our decision that this case is not moot will not be affected by the Supreme Court's decision in *Church of Scientology*.

those orders. We disagree. Under laws enacted by Congress, the ALJ's discovery orders were issued on behalf of the Commission pursuant to delegated authority from the FMC, and Guam was statutorily authorized to seek enforcement of those orders.

Under section 105 of Reorganization Plan No. 7, 75 Stat. 840 (1961)[4] the FMC has delegated to the ALJ the authority to sign and issue subpoenas and to take depositions or cause them to be taken. 46 C.F.R. § 502.147 (1991).[5] The FMC retains the right to review such orders "upon its own initiative or upon petition of a party;" however, the ALJ's actions are "deemed to be the action of the Commission" if the FMC does not exercise the right of review. Reorganization Plan No. 7 § 105, 75 Stat. 840 (1961). Accordingly, the ALJ's discovery orders were here the orders of the Commission.

Guam properly moved to have the District Court enforce the ALJ's orders. As noted above, section 29 of the Shipping Act of 1916, *see* note 1 *supra*, provides that "*any party injured*" by another party's refusal to comply with an order of the FMC is authorized to apply to a District Court for enforcement. 46 U.S.C. app. § 828 (1988). Under applicable FMC rules, to ensure that the Commission is aware of any unresolved controversy, any party intending to seek enforcement in district court must give the Commission five days notice before proceeding. 46 C.F.R. § 502.-210(b) (1991). Guam so notified the FMC. Hence, there is no procedural error in Guam's request for an enforcement order.[6]

### C. *Administrative Subpoena*

In this case, the District Court was authorized to "enforce obedience" with the agency's discovery order "if after hearing, the court determine[d] that the order was regularly made and duly issued." 46 U.S.C. app. § 828 (1988). Enforcement

**4.** Sec. 105 *Authority to delegate.*—(a) The Commission shall have the authority to delegate, by published order or rule, any of its functions to ... a hearing examiner ... including functions with respect to hearing, determining, ordering, certifying, reporting, or otherwise acting as to any work, business, or matter....

**5.** In pertinent part, 46 C.F.R. § 502.147 states, *Functions and Powers.* (a) *Of presiding officer.* The officer designated to hear a case shall have authority to ... sign and issue subpenas authorized by law; take or cause depositions to be taken....

**6.** The Commission, in a submission to this court, expressly acceded to the ALJ's delegated powers:

This statement is filed in response to the court's order of July 12, 1991, requesting the Federal Maritime Commission ("Commission" or "FMC") to file a statement as to whether the subpoena and discovery orders issued by the presiding administrative law judge ("ALJ") in *The Government of Guam v. Sea–Land Service, Inc. and American President Lines, Ltd.,* Docket 89–26, constitute "orders of the Commission" under sections 27 and 29 of the Shipping Act, 1916, 46 U.S.C. app. §§ 826 and 828.

Pursuant to section 105 of Reorganization Plan No. 7 of 1961, 75 Stat. 840, the Federal Maritime Commission has, by rule, delegated to presiding officers, including ALJs, in FMC cases the authority to sign and issue subpoenas and to take or cause depositions to be

taken. However, the Commission normally does not review the rulings of an ALJ until after he or she has issued an initial decision. Indeed, section 502.153(a) of the Commission's Rules of Practice and Procedure, 46 C.F.R. § 502.153(a), provides that:

Rulings of the presiding officer may not be appealed prior to or during the course of the hearing, or subsequent thereto, if the proceeding is still before him or her, except where the presiding officer shall find it necessary to allow appeal to the Commission to prevent substantial delay, expense, or detriment to the public interest, or undue prejudice to a party.

The ALJ in Docket 89–26 determined not to certify the appeal of his discovery rulings to the Commission.

Although the Commission has not reviewed the subpoena and discovery orders of the ALJ, section 105 of Reorganization Plan No. 7 provides that if no review is taken, the action of the ALJ shall be deemed to be the action of the Commission. [46 C.F.R. § 502.147]. Accordingly, it is the position of the Commission that the subpoena and discovery orders of the ALJ here involved are "orders of the Commission" for purposes of sections 27 and 29 of the Shipping Act, 1916.

Statement Submitted By Federal Maritime Commission to the Court of Appeals for the D.C. Circuit, C.A. No. 91–5121 (Docket Entry No. 5 July 18, 1991) (footnotes omitted). In view of this Statement, along with the aforecited statutory provisions and Commission rules, there is no doubt that, in this case, the Commission is bound by the consequences of its delegation.

could be denied if "there [was] 'too much indefiniteness or breadth' in the items requested, or [if] the inquiry [was] not one which the requesting agency [was] lawfully authorized to make." *Federal Election Comm'n v. Machinists Non–Partisan Political League*, 655 F.2d 380, 385 (D.C.Cir.) (citing *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 208–09, 66 S.Ct. 494, 505–06, 90 L.Ed. 614 (1946)), *cert. denied*, 454 U.S. 897, 102 S.Ct. 397, 70 L.Ed.2d 213 (1981). The central question before this court is whether the FMC possessed the jurisdiction to determine whether it had jurisdiction to adjudicate Guam's complaint; hence the chicken and the egg problem.

■ In considering this question, we are not without legal precedent. The well-established rule of this circuit is that "an agency has jurisdiction to determine the scope of its authority, in the first instance, and that such matters will not be determined in a proceeding to enforce a subpoena." *Civil Aeronautics Bd. v. Deutsche Lufthansa Aktiengesellschaft*, 591 F.2d 951, 952 (D.C.Cir.1979). The narrow exception to this doctrine arises only when there is "a patent lack of jurisdiction." *Id.*

■ Sea–Land argues that the FMC patently lacks jurisdiction over this complaint. The cornerstone of Sea–Land's argument is an ICC Declaratory Order, *Puerto Rico Maritime Shipping Auth. & PRMMI Trucking, Inc.*, 7 I.C.C.2d 205 (1990) ("Declaratory Order"), in which the ICC concluded "that the agency with which the tariff is filed has the primary and exclusive authority initially to determine whether the service is subject to its regulation." *Id.* at 211–12. According to Sea–Land, because its post–1989 tariffs were filed with the ICC, the FMC plainly lacked jurisdiction to even consider whether it properly should have jurisdiction. Sea–Land also invokes section 33 of the Shipping Act of 1916, 46 U.S.C. app. § 832, which provides that the act is not to affect the jurisdiction of the

ICC or to confer on the FMC "concurrent power or jurisdiction" over any matter within the jurisdiction of the ICC. We reject these contentions.

Several factors inform our finding that no patent lack of jurisdiction exists here. On its face, Guam's complaint that Sea–Land actually operates port-to-port arguably places the case in the FMC's jurisdiction. That is, if Guam's allegations are correct, then this case was properly before the FMC; it does not matter that Sea–Land is otherwise subject to ICC jurisdiction.

Nor does the ICC's Declaratory Order create a patent lack of jurisdiction. In its Declaratory Order, the ICC asserted that the first opportunity to determine whether the involved services are port-to-port or intermodal should be given to "the agency with which the tariff is filed." Declaratory Order at 211. But this declaration is without force in this case. For one thing, the ICC's declaration was issued in a case involving parties other than those before the court. Furthermore, the ICC is not involved in the instant action, so we cannot presume to know what the agency's position might be with respect to the precise matter at hand. Additionally, the cited declaration is flatly at odds with the law of this circuit, which allows an agency to consider its jurisdictional boundaries for itself. *See id.* Finally, an agency's assertion of jurisdiction cannot without more bind a sister-agency or this court.[7]

We recognize that, by virtue of this decision, there may be some cases in which both the FMC and the ICC exercise overlapping jurisdiction to determine their respective jurisdictions over particular transactions. This is neither surprising nor troublesome. Indeed, our decision in *Alabama Great S. R.R. v. Federal Maritime Comm'n*, 379 F.2d 100, 102–03 (D.C.Cir. 1967), supports the proposition that two agencies might simultaneously investigate the factual circumstances to determine which agency possesses exclusive authori-

7. In *CF Indus. Inc. v. F.E.R.C.*, 925 F.2d 476, 478 n. 1 (D.C.Cir.1991), we stated that we will not defer to one agency's claim to exclusive jurisdiction if a second agency disagrees. While this case does not present such a direct conflict, because neither agency is a party to this litigation, the rationale underlying our refusal to extend deference in such a situation informs our decision here.

ty. As we stated in that case, "there are instances in which both agencies may need the same information to discharge their separate but dovetailing responsibilities." *Id.* at 103. Where, as here, the FMC does not clearly lack jurisdiction, the resolution of the jurisdictional question will turn on issues of fact and may result in simultaneous inquiry by both agencies. *See Ernstthal*, 607 F.2d at 490. We do not read § 832, making the substantive jurisdictions of the ICC and the FMC mutually exclusive, as having that effect on their respective jurisdictions to determine jurisdiction.

In the future, the agreement between the FMC and the ICC may moot claims such as the one at issue in this case. *See* note 2 *supra.* In the instant matter, however, because the FMC has a colorable claim of jurisdiction, the Commission, through its ALJ, had jurisdiction to order discovery for the purpose of ascertaining whether it could exercise jurisdiction over the entire complaint. Accordingly, the District Court did not err in enforcing the ALJ's discovery order.

### III. Conclusion

The District Court's enforcement order is affirmed.

*So Ordered.*