Olivia **FEATHERSON**, Appellant,

v.

**EDUCATIONAL DIAGNOSTIC INSTITUTE, INC., James E. Brown, Richard Henning & Travis Murrell, Appellees.**

**Nos. 05–CV–1061, 05–CV–1542.**

District of Columbia Court of Appeals.

Argued Jan. 12, 2007.
Decided Oct. 4, 2007.

---

Gregory L. Lattimer, Washington, DC, for appellant.

Kyung N. Dickerson, with whom Jason D. Smolen, Vienna, VA, was on the brief, for appellees Educational Diagnostic Institute, Inc. and Richard Henning.

Winfred R. Mundle, Washington, DC, with whom Tilman Gerald, was on the brief, for appellee James E. Brown.

Before WASHINGTON, Chief Judge, THOMPSON, Associate Judge, and STEADMAN, Senior Judge.

WASHINGTON, Chief Judge:

This appeal stems from appellant's attempts to enforce a settlement agreement between appellant and appellees, Educational Diagnostic Institute, Inc. ("EDI"), James E. Brown, Richard Henning and Travis Murrell. On appeal, the appellant, Dr. Olivia Featherson, raises four claims of error. Only appellant's contention that the trial court abused its discretion in denying the appellant's subpoena request requires any discussion. We reverse and remand.

## I.

### *Factual and Procedural Background*

This appeal stems from a long-standing and tumultuous dispute regarding the payment due to appellant for consulting services she provided on behalf of appellees.[1] Appellant was hired by EDI as an education specialist in July 1998. Shortly after her contract with EDI was terminated, appellant filed suit in Superior Court alleging that appellees had not compensated her for the diagnostic services she performed for several students on behalf of EDI. In September 1999, the parties entered into a settlement agreement ("the Agreement") that purportedly resolved the lawsuit. The Agreement provided the method by which disputed amounts due and owing to appellant would be determined, and further provided that the appellees would submit with each payment to appellant copies of the corresponding District of Columbia Public School ("DCPS") records.

Thereafter, appellees paid appellant fourteen checks, totaling over thirty-six thousand dollars, but failed to provide supporting documentation with the checks, in

---

1. EDI provides diagnostic and advocacy services to the District of Columbia Public Schools; EDI's clients are referred to and paid for by the District of Columbia's Public Schools Special Education Program.

violation of the terms of the Agreement. Appellant filed a "Motion to Compel Compliance with Settlement Agreement and for Interest and Attorney's Fees," based on the appellees' failure to provide appellant with the supporting documentation for the amount of the payments made by DCPS to EDI for the clients the appellant serviced. On September 12, 2003, the Honorable A. Franklin Burgess, Jr. entered an order "granting" appellant's motion. Specifically, Judge Burgess ordered the appellees to make and provide copies of all the records EDI received from DCPS for the clients serviced by the appellant so that appellant could reconcile those records with her personal records. The order also resolved the interpretation of certain provisions in the Agreement. In sum, Judge Burgess held that the Agreement covered all the students for whom appellant submitted invoices to EDI. Appellant's compensation, under the Agreement, would be calculated by first determining how much DCPS paid EDI for each of those students. Then, EDI would deduct its fees and other costs and appellant would be paid one-third of the net amount. Based on this clarification, the trial court instructed the appellant and appellees to determine how much compensation, if any, was due and owing to the appellant. Finally, the order stated that the appellees "shall pay fees and costs associated with the prosecution of Plaintiff's Motion."

On October 21, 2003, EDI filed a praecipe in compliance with the trial court's September 2003 order, stating that copies of all the required documents had been forwarded to appellant. Appellees further stated that all of their obligations under the Agreement had been satisfied and that no further monies were due and owing to the appellant. Appellant, however, disagreed and asserted that she was entitled to an additional twenty-four thousand dollars under the terms of the Agreement. In December 2003, appellant filed a second Motion to Compel Compliance and again appeared before Judge Burgess, who held the motion in abeyance while the parties were ordered to re-examine the records in an effort to determine which students were provided services by appellant.

Unfortunately, no agreement could be reached and on March 24, 2004, the parties attended a status conference before the Honorable Geoffrey M. Alprin who had assumed Judge Burgess' calendar. At the status conference, appellant's trial counsel requested that the trial court issue a subpoena to DCPS for the records of the students that appellant serviced through EDI. Appellant contended that she had been uncompensated for as many as 30 students and under-compensated for 35 students she had serviced. Appellees claimed to have surrendered all records to appellant. Judge Alprin denied the request and instead ordered the appellant to provide the appellees with a list of students for whom she believed she had not been reimbursed by April 25, 2005.

Appellant, as ordered, provided appellees with a list of students for whom she believed she was still entitled to be compensated. Appellees took exception to the appellant's list and because the parties could not agree on a list of students for whom the appellant was entitled to compensation, the appellant and appellees separately submitted proposed findings of fact to Judge Alprin. On July 29, 2005, Judge Alprin denied appellant's "Motion to Enforce Settlement Agreement" reasoning that because the appellant failed to provide documentation to support her claim that she was owed more money, she was not entitled to the further compensation. Later, on December 1, 2005, Judge Alprin denied appellant's request for attorney's fees and costs.

## II.

### Denial of Appellant's Request for Subpoena

We first address appellant's argument that the trial court abused its discretion in denying appellant's request to subpoena DCPS for the records of students that the appellant serviced on behalf of EDI. It is well-settled that, "a trial court discovery order . . . will be disturbed only for an abuse of discretion." *Kay v. Pick*, 711 A.2d 1251, 1256 (D.C.1998). It is a rare circumstance where we find an abuse of discretion in the context of discovery disputes because we are appropriately reluctant to substitute our judgment for that of the trial court. *See generally Johnson v. United States*, 398 A.2d 354, 361 (D.C.1979). Nevertheless, this court has found that a trial court abuses its discretion where the trial court's ruling on a discovery matter is based on erroneous legal reasoning or mistake of fact. *See id.* at 361–62 (emphasizing that a decision committed to the trial court's discretion is not free from restraints of "fact and reasoned dictates of law").

For example, in *In re Q.D.G.,* this court held that the trial court abused its discretion when the trial court declined to sanction a party for failure to produce a discoverable piece of evidence for inspection because the trial court's denial was based on flawed legal reasoning. 706 A.2d 36, 38 (D.C.1998). In that case, appellant was charged with unauthorized use of a vehicle and the testimony elicited by the government was that the vehicle driven by appellant had a "punched out" steering column, which indicates that a vehicle is stolen. *Id.* at 37. The appellant argued that inspection of the vehicle was necessary to preparation of his defense. *Id.* After the government informed the appellant that the vehicle was not available for inspec-

tion, the appellant sought and the trial court denied the appellant's motion for sanctions. *Id.* The trial court reasoned, without explanation, that the vehicle was not discoverable evidence and thus appellant was not entitled to sanctions. *Id.* On appeal, this court concluded that the vehicle was "material to the preparation of [appellant's] defense" and that absent a showing of privilege or other competing interest of the government, the trial court abused its discretion when it failed to sanction the government for its failure to produce the vehicle because its underlying belief that the vehicle was not evidence was incorrect. *Id.* at 38 n. 5; *see also* Super. Ct. Civ. R. 26(b)(1) (indicating parties are entitled to obtain discovery for non-privileged materials which are relevant to the claim or defense of either party).

Similarly, we also found an abuse of discretion where the trial court denied a discovery request for relevant, non-privileged information based on erroneous legal reasoning. *White v. Washington Metro. Area Transit Auth.*, 432 A.2d 726 (D.C. 1981). In *White,* the plaintiff filed a motion seeking an order to compel the defendant to answer interrogatories and answer document requests. After a hearing, the trial court denied the appellant's motion, reasoning that even with further discovery the court was skeptical that the appellant would be able to establish her case of gross negligence. *Id.* at 729. This court held that even if the additional discovery would have been of no avail to the plaintiff's claim, she was nevertheless entitled to the discovery because the requested discovery was relevant and not privileged. *Id.*

In this case, appellant's trial counsel requested that the trial court issue a

subpoena to obtain records from DCPS.[2] Appellant argued that the only way she could show that the appellees were in non-compliance with the Agreement was to determine exactly how much DCPS paid EDI for the clients she serviced during the relevant period, which could only be accurately determined from DCPS' records. Appellant further explained that without those documents she could not maintain her cause of action because she would not be able to demonstrate that she was entitled to additional amounts she argued were still due and owing. Judge Alprin rejected her argument based on his acceptance of EDI's representation that appellant had all the documents EDI received from DCPS and, therefore, there were no additional documents to be discovered. While we do not disturb the trial court's credibility determination, this court nevertheless concludes that the trial court abused its discretion in denying appellant's subpoena request. The Agreement, as interpreted by Judge Burgess, requires appellees pay to appellant one-third of the amount DCPS paid to EDI, minus specific deductions, for the clients appellant serviced during the relevant time period. Because of Judge Burgess' interpretation of the Agreement, the only accurate way appellant could determine she was owed

more money was by reconciling DCPS' records for the students she serviced on behalf of EDI against the records provided by EDI. Thus, the requested documents were both relevant and probative in this case.

In fact, we note that the trial court's denial of appellant's request to subpoena DCPS was the death knell of appellant's case. The trial court dismissed appellant's motion because she failed to provide any documentation to support her claim. Without having the ability to subpoena DCPS' records, however, there was no way for appellant to provide supporting documentation because the only records she had were those from EDI. There is no claim that the sought discovery is privileged or that the production of documents from DCPS would be unduly burdensome or overly expensive to produce.[3] *Cf. Phelan v. City of Mount Rainier,* 805 A.2d 930 (D.C.2002) (concluding that the trial court did not err when it granted a protective order because the opposing party established that although the request was relevant and necessary, the discovery requested was also privileged and overly broad). Therefore, we conclude that the trial court abused its discretion.[4]

Having concluded that the trial court should have granted appellant's request to

2. This court recognizes that appellant's trial counsel could have simply issued the subpoena without leave of the court pursuant to Super. Ct. Civ. R. 45(c)(3), and we, as well as appellant's current counsel, are perplexed as to why trial counsel did not do so. Although there is an argument that the trial counsel could have issued the subpoena, even after the trial court's denial, we find that trial counsel took the prudent course of action by not issuing a subpoena that had been explicitly denied by the court.

3. Nothing in this opinion, however, precludes the trial court from squashing the subpoena if it concludes—upon proper motion from the District and after proper fact-finding—that

the documents requested are privileged and/or unduly burdensome for the District to produce. Super. Ct. Civ. R. 45(c)(3)(A) (2007).

4. In addition, we vacate that portion of Judge Alprin's order, dated November 29, 2005, denying appellant's motion for attorney's fees and costs. Having concluded that the trial court should have granted appellant's request for a subpoena and, given the possibility that appellant will be able to show that EDI has not fully complied with the settlement agreement, a ruling that appellant is not the prevailing party and therefore, is not entitled to attorney's fees, is premature.

issue a subpoena for documents to DCPS, we need not address the other issues raised in appellant's brief. We reverse and remand for further proceedings consistent with this opinion, vacate the order denying appellant's request for attorney's fees, and vacate the order denying appellant's motion to compel compliance with the settlement agreement.

*So ordered.*