*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CV-0210

JEANETTE M. BRUCE, APPELLANT,

v.

POTOMAC ELECTRIC POWER COMPANY, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB9586-12)

(Hon. Michael L. Rankin, Trial Judge)

(Argued October 26, 2016                    Decided June 29, 2017)

*John R. Ates*, with whom *Patricia A. Smith* and *Allison C. Pienta* were on the brief, for appellant.

*Martin H. Freeman*, with whom *Mark A. Freeman* was on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*,[*] GLICKMAN, *Associate Judge,* and PRYOR, *Senior Judge*.

BLACKBURNE-RIGSBY, *Chief Judge*:  In this appeal, appellant Jeanette M.

Bruce challenges the trial court's enforcement of a subpoena against her and

_____

[*] Chief Judge Blackburne-Rigsby was an Associate Judge at the time the case was argued.  Her status changed to Chief Judge on March 18, 2017.

challenges the trial court's award of attorney's fees to appellee Potomac Electric Power Company ("Pepco"). She also challenges the trial court's decision declining to impose sanctions on Pepco. Because Mrs. Bruce ultimately complied with the subpoena, we conclude that her appeal of the trial court's order enforcing the subpoena is moot and should be dismissed. *Settlemire v. District of Columbia Office of Emp. Appeals*, 898 A.2d 902, 904-05 (D.C. 2006) ("[W]hen the issues presented are no longer 'live' or the parties lack 'a legally cognizable interest in the outcome,' a case is moot."). Regarding her remaining claims, we hold that the trial court did not abuse its discretion in declining to sanction Pepco because Pepco's subpoena was not improper, oppressive, or issued in bad faith. However, we conclude that the trial court abused its discretion by awarding Pepco attorney's fees, absent a finding from the trial court that Mrs. Bruce acted in bad faith. Accordingly, we vacate the trial court's order awarding attorney's fees and costs to Pepco, and affirm its decision declining to impose sanctions on Pepco.

## I.    Factual and Procedural Background

On June 29, 2012, during a "derecho" thunderstorm,[1] a tree fell onto a Pepco-operated power line in front of the residence of Shiva and Mohammed Ghafoorian, setting fire to Mr. Ghafoorian's car. While attempting to extinguish the fire, Mr. Ghafoorian sustained serious injuries and later died. Mrs. Ghafoorian — who also sustained serious injuries, but survived the incident — filed suit against Pepco, claiming the downed power line electrocuted Mr. Ghafoorian, and that Pepco was negligent in failing to install interrupters to shut off the flow of electricity to the downed power line. In defense, Pepco argued that Mr. Ghafoorian could not have been killed by the downed power line because it was de-energized at the time of the incident. Pepco's theory of the case was that Mr. Ghafoorian died from burns sustained while fighting the fire.

Mrs. Bruce, one of the Ghafoorians' neighbors, took a photograph of the fire with her cell phone at 11:05 p.m. on the night of the storm. She voluntarily e-mailed a copy of the photograph to Pepco's counsel during discovery on

---

[1] A derecho thunderstorm is "is a widespread, long-lived wind storm. . . . associated with bands of rapidly moving showers or thunderstorms . . . ." Stephen F. Corfidi, Jeffry S. Evans & Robert H. Johns, *About Derechos*, noaa.gov, http://www.spc.noaa.gov/misc/AbtDerechos/derechofacts.htm (last updated April 21, 2017).

November 5, 2013. Shortly thereafter, Pepco deposed Mrs. Bruce and learned that she observed Mr. Ghafoorian using a fire extinguisher at the time she took the photograph. Although the photograph that was sent to Pepco was dark and unclear, it possibly contained a figure to the left of Mr. Ghafoorian's car. Because Pepco had independent evidence that the power line was deactivated by 10:55 p.m. on the night of the storm, the photograph and Mrs. Bruce's testimony that Mr. Ghafoorian was alive and fighting the fire at 11:05 p.m. appeared to corroborate Pepco's defense that Mr. Ghafoorian was not electrocuted.

One month later, Mrs. Bruce amended her deposition answers pertaining to when she saw Mr. Ghafoorian and when she took the photograph.[2] Concerned that the amended answers might affect their theory of the case, Pepco served Mrs.

---

[2] Specifically, Mrs. Bruce clarified:

> "Yes, I saw Mr. Ghafoorian, but not when I took the picture."

> "I went outside at least twice. I only saw Mr. Ghafoorian the first time."

> "Yes, I went outside at least twice. I saw Mr. Ghafoorian using the fire extinguisher the first time. I saw the fire both times and took a picture of the scene with my cell phone the second time."

Bruce with a subpoena *duces tecum* requesting that she appear for a second deposition and produce her cell phone.  It stated:

> Mrs. Bruce is to produce her cell phone along with her sim card, the actual (unaltered) jpeg file containing the photograph of the car fire as described in your deposition taken on November 15, 2013 (attached hereto as Exhibit "A"), and the cell phone number, account number, account name and service provider of the phone used to take the photograph as described in your deposition taken on November 15, 2013 of the car fire described in your deposition taken on November 15, 2013.

In response to the subpoena, Mrs. Bruce filed a motion to quash or modify the subpoena, and requested Pepco be sanctioned for "failing to take reasonable steps to avoid imposing an undue burden or expense on her" pursuant to Super. Ct. Civ. R. 45 (c)(1).[3]  She argued that Pepco's subpoena was unduly burdensome because it violated her right to privacy, as her cell phone contained confidential information, and because "she ha[d] already produced the one photograph she took

---

[3] Super. Ct. Civ. R. 45 (c)(1) states:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

at the scene and [had] provided her deposition testimony . . . ." Pepco, in turn, filed a motion to compel production of her cell phone.

On April 24, 2014, the trial court denied Mrs. Bruce's motion and granted Pepco's motion to compel, permitting Pepco to inspect and copy the relevant photograph and "identifying information." However, the trial court also ordered that Pepco conduct the inspection pursuant to an existing protective order for confidential information in the case. The protective order provided general rules and limitations for designating, handling, and destroying confidential materials. The court further ordered Pepco's expert to follow the procedure that Pepco claimed was necessary for obtaining the original photograph: "copy all of the photographs on Mrs. Bruce's phone and then . . . delete all but the single photograph Pepco sought."

Instead of handing over her phone, Mrs. Bruce retained her own expert in computer forensics to inspect the contents of her phone.[4] After Pepco served a

---

[4] Mrs. Bruce also appealed the April 24, 2014, order compelling production of her cell phone. We dismissed her appeal because a non-party witness must await a sanction for contempt before obtaining appellate review. *United States v. Harrod*, 428 A.2d 30, 31 (D.C. 1981) (en banc) ("[A] a witness may obtain review of a subpoena or a discovery order only after he persists in his refusal to comply and is sentenced for contempt of court.").

second subpoena on Mrs. Bruce, she submitted a declaration to Pepco from her expert attesting that the photograph she produced via email was an "exact duplicate" of the one on her phone, and submitted another copy of the photograph to Pepco using a flash drive. In addition, Mrs. Bruce filed a second motion to quash and a motion for reconsideration of the court's April 24, 2014, order for her to turn over her phone in light of the Supreme Court's decision in *Riley v. California*, 134 S. Ct. 2473 (2014).

The trial court denied both motions, finding that "the photograph and its identifying information could be dispositive" to Pepco's case. Pepco moved for Mrs. Bruce to be held in contempt, and in response, Mrs. Bruce argued that she was in substantial compliance with the court's order by furnishing her own expert to supply the photograph for inspection. The trial court did not rule on the contempt motion, but ordered Mrs. Bruce to make her expert available for Pepco to depose, to provide Pepco with the expert's methodology, and to bear the costs associated with the deposition because in seeking her own expert Mrs. Bruce had "acted unilaterally and without prior court approval."

Pepco deposed Mrs. Bruce's expert, but maintained at a subsequent hearing on November 20, 2014, that it still needed its own expert to examine Mrs. Bruce's

cell phone, in part because Mrs. Bruce had not provided all the documents related to her expert's methodology. The trial court agreed, and again ordered Mrs. Bruce to produce her cell phone to Pepco. However, the trial court also allowed Mrs. Bruce to propose additional safeguards for the inspection process. The trial court adopted many of Mrs. Bruce's suggested safeguards in an addendum to the stipulated protective order, including provisions that (1) allowed Mrs. Bruce's expert to monitor the inspection process; (2) limited access of the contents of the phone to the two experts; (3) constrained the temporal scope of information to be exported; and (4) required Pepco to immediately delete all other exported files, among other additional safeguards.

On December 4, 2014, Mrs. Bruce produced her cell phone for Pepco. Pepco's expert determined that the only photograph of the fire on Mrs. Bruce's cell phone was the same photograph that Mrs. Bruce's expert had already produced, and was the same photograph "that Ms. Bruce herself voluntarily shared with Pepco's counsel by email on November 5, 2013." Subsequently, the trial court dismissed Pepco's motion to hold Mrs. Bruce in contempt because "she complied with the court's order to turn over her cell phone to Pepco for inspection and copying." Nonetheless, on January 23, 2015, the trial court issued an order granting Pepco's request for Mrs. Bruce to pay Pepco $4,742.00 in attorney's fees

and costs incurred in deposing Mrs. Bruce's expert. The court concluded that by failing to provide Pepco with all the information concerning the methodology of her expert *before* the deposition, she was not in "substantial compliance" with the court's April 24, 2014, order. In addition, the court denied Mrs. Bruce's request to recover attorney's fees and costs from Pepco for her involvement in the litigation, explaining that her costs were incurred solely as a result of her non-compliance with the trial court's order to compel, and that her privacy argument based on *Riley* was "wholly inapplicable to the instant matter." This appeal followed.

## II. Discussion

### A. *Enforcement of the Subpoena*

Mrs. Bruce argues that the trial court erred in enforcing the subpoena which compelled production of her cell phone by failing to properly weigh her privacy interests under the Fourth Amendment and Super. Ct. Civ. R. 45. Pepco counters that this issue is moot because Mrs. Bruce complied with the subpoena, and thus this court cannot provide any relief for her privacy concerns. To the extent Mrs. Bruce is seeking a declaration that the trial court committed a legal error when it

ordered her to produce her cell phone, we agree with Pepco and hold that this issue is now moot.

Generally, a case is moot where parties lack a "legally cognizable interest in the outcome," or the issues are no longer "live." *Fraternal Order of Police, Metro. Labor Comm. v. District of Columbia*, 113 A.3d 195, 198 (D.C. 2015) (quoting *Settlemire v. District of Columbia Office of Emp. Appeals*, 898 A.2d 902, 904–05 (D.C. 2006)). "Unless there is a possibility that further penalties or legal disabilities can be imposed as a result of the judgment, this court may not render in the abstract an advisory opinion." *McClain v. United States*, 601 A.2d 80, 81-82 (D.C. 1992) (quoting *Holley v. United States*, 442 A.2d 106, 107 (D.C.1981)) (finding an appeal from an allegedly unlawful pretrial detention order was moot where a criminal defendant pled guilty shortly after filing an appeal, thus ensuring "no collateral legal consequences as a result of the pretrial detention"). Accordingly, this court will find a case to be moot where a party merely seeks a declaratory judgment, *Fraternal Order of Police, supra*, 113 A.3d at 199, or simply has a "desire for vindication." *Settlemire, supra*, 898 A.2d at 907. In the discovery context, compliance with a subpoena will typically render an appeal from an enforcement order moot. *Office of Supervision Dep't of Treasury v. Dobbs*, 931 F.2d 956, 957 (D.C. Cir. 1991) (compiling case law from U.S. Courts

of Appeal). Mootness is avoided, however, if a court can still fashion at least a partial remedy for the complying party. *Church of Scientology v. United States*, 506 U.S. 9, 13 (1992); *see, e.g.*, *Guam v. Sea-Land Serv., Inc.*, 958 F.2d 1150, 1153 (D.C. Cir. 1992) ("A party may challenge a subpoena following compliance with an enforcement order when the party seeks the return of the documents it had supplied pursuant to the subpoena duces tecum.").[5]

In this case, Mrs. Bruce no longer has a privacy interest to protect since she has produced her phone and Pepco completed its inspection. Additionally, there are no lingering post-inspection privacy concerns from which we could afford Mrs. Bruce relief. In accordance with the protective order and addendum, Pepco did not retain any of Mrs. Bruce's cell phone data after the inspection, with the exception of the original copy of the photograph that Mrs. Bruce had already sent to Pepco voluntarily via email. *Cf. Church of Scientology, supra*, 506 U.S. at 13 (finding that, where privacy interests were at stake, requiring the government to return or

---

[5] There is also an established exception for cases that are "capable of repetition, yet evading review." *United States v. Edwards*, 430 A.2d 1321, 1324 n.2 (D.C. 1981) (en banc), cert. denied, 455 U.S. 1022 (1982). To fall under this exception, "(1) the challenged action must be of too short a duration to be litigated fully prior to its cessation or expiration, and (2) there must be a reasonable expectation that the same complaining party will be subjected to the same action again." *McClain, supra*, 601 A.2d at 82. Neither element of this exception is present here.

destroy any and all copies of tapes that had been obtained by the IRS was a remedy sufficient to overcome mootness). Nor will there be any further discovery requested from Mrs. Bruce because the underlying suit between Pepco and the Ghafoorians settled. *See Guam, supra*, 958 F.2d at 1153 (finding partial compliance did not render an appeal from a discovery order moot where "one deposition remain[ed] to be taken and a number of documents ha[d] yet to be produced"). Therefore, we have no remedy to offer Mrs. Bruce. *See Fraternal Order of Police, supra*, 113 A.3d at 199.

Mrs. Bruce argues that the only reason she complied with the subpoena is because the trial court threatened to find her in contempt and impose sanctions. However, the fact that the risk of contempt is uncomfortable for a litigant "does not provide a basis for [appellate] courts to act when [a case is otherwise moot]." *Fed. Ins. Co. v. Maine Yankee Atomic Power Co.*, 311 F.3d 79, 82 (1st Cir. 2002). "A pretrial order granting or denying discovery from a non-party witness is not ordinarily final for purposes of appeal unless, in the case of an order granting discovery, the subject of the order refuses to comply and is adjudicated in contempt." *Crane v. Crane*, 657 A.2d 312, 315 (D.C. 1995). As such, "a witness may obtain review of a subpoena or a discovery order *only* after he persists in his refusal to comply and is sentenced for contempt of court." *United States v.*

*Harrod*, 428 A.2d 30, 31 (D.C. 1981) (en banc) (emphasis added). Because Mrs. Bruce complied with the subpoena and was not found in contempt by the trial court, the court's order to compel production of her cell phone is not subject to review. Accordingly, we dismiss this portion of her appeal.

### B. Sanctions under Super. Ct. Civ. R. 45 (c)(1)

Mrs. Bruce further requests that we order the trial court to "award fees and expenses for the undue burden" imposed on her by Pepco under Super Ct. Civ. R. 45 (c)(1). Specifically, she asserts that Pepco's subpoena violated her right to privacy and that its subsequent motion to compel enforcement of that subpoena caused her unnecessary litigation expenses. Because the trial court did not abuse its considerable discretion under Rule 45, we affirm the court's denial of sanctions to Mrs. Bruce. *Featherson v. Educ. Diagnostic Inst., Inc.*, 933 A.2d 335, 338 (D.C. 2007) ("It is a rare circumstance where we find an abuse of discretion in the context of discovery disputes because we are appropriately reluctant to substitute our judgment for that of the trial court.") (internal citation omitted).

Super. Ct. Civ. R. 45 (c)(1) requires a party or attorney issuing a subpoena take reasonable steps to avoid imposing an "undue burden or expense on a person

subject to the subpoena." *See* Super. Ct. Civ. R. 45 (c)(1). "The court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply." *Id.* Our rule is substantially identical to its federal counterpart,[6] and we may look "to decisions of the federal courts interpreting the counterpart federal rules as persuasive authority in interpreting our local civil rules." *Nave v. Newman*, 140 A.3d 450, 454 n.3 (D.C. 2016).

The trial court's decision to impose sanctions is discretionary. *Featherson, supra*, 933 A.2d at 338; *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013).[7] When assessing whether a civil subpoena imposes an undue burden and ought to be quashed, the trial court should balance "the relevance of the

---

[6] The federal rule is identical to Super. Ct. Civ. R. 45 (c)(1) in all relevant respects. In full, Fed. R. Civ. P. 45 (d)(1) reads:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

[7] The 2013 amendment to the Federal Rules of Civil Procedure renumbered Rule 45 (c)(1) as Rule 45 (d)(1) without any substantive changes. *Legal Voice, supra*, 738 F.3d at 1180 n.1.

discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *In re Herndon*, 596 A.2d 592, 596 (D.C. 1991) (citation and internal quotation marks omitted). This inquiry includes the privacy concerns of non-parties. *Id.* at 597; *see also Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007) ("The Rule 45 'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties.").

Even if a court decides to quash a subpoena, however, Rule 45 does not require the court to automatically impose sanctions on the issuing party or attorney. *Goldberg v. Amgen, Inc.*, 123 F. Supp. 3d 9, 22 (D.D.C. 2015). "Rather, courts . . . have looked to whether the subpoena was issued in bad faith or for some improper purpose." *Id.*; *see also Legal Voice, supra*, 738 at 1185 ("A court may [] impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law."); *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012) (finding that "absent undue burden imposed by an oppressive subpoena, a facially defective subpoena, or bad faith on the part of the requesting party, Rule 45 (c)(1) sanctions are inappropriate"); *Alberts v. HCA Inc.*, 405 B.R. 498, 503 (D.D.C. 2009) ("[B]latent abuse of the subpoena power is

a common thread running through decisions in which sanctions have been awarded under [Federal] Rule 45 (c)(1).").

Here, Mrs. Bruce has failed to explain how the trial court abused its discretion in failing to sanction Pepco under Super. Ct. Civ. R. 45 (c)(1). As an initial matter, she does not explain how Pepco's subpoena was issued in bad faith or for an improper purpose. Pepco's subpoena was narrowly tailored. Pepco sought to obtain the original data from a single photograph. *Compare to Legal Voice, supra*, 738 F.3d at 1185 (even where district court denied a motion to compel as to eight of the requested fourteen categories of information, subpoena against a non-party was not facially overbroad). And it sought this photograph only after Mrs. Bruce's alterations to her original deposition undermined Pepco's theory of the case that Mr. Ghafoorian was alive at the time Mrs. Bruce took the photograph — a fact the trial court found "could be dispositive" to Pepco's case. Therefore, the subpoena was not facially overbroad and was targeted to obtaining information relevant to the underlying suit. *Cf. In re Herndon, supra*, 596 A.2d at 597 (affirming the decision to deny a "sweeping" discovery request to a non-party where the need for documents did not "sufficiently outweigh the burden and invasion of corporate privacy") (internal quotes omitted).

Mrs. Bruce has also failed to explain how Pepco's enforcement of its subpoena was oppressive or an abuse of the discovery process. Mrs. Bruce relies on her general right to privacy to argue an undue burden existed. But subpoenaing private or sensitive information of a non-party does not automatically trigger an undue burden. *See Mount Hope, supra*, 705 F.3d at 427, 429 (reversing an award of sanctions where, after a district court granted a motion to quash a subpoena requesting the identities of seven anonymous e-mail account holders on First Amendment grounds, there was no bad faith in requesting the protected information). Rather, it requires the trial court to balance the competing interests of the litigants and hardships associated with compliance. *In re Herndon, supra*, 596 A.2d at 596. The trial court did so here, and found against Mrs. Bruce. While Mrs. Bruce is understandably frustrated that, in hindsight, the photo she was compelled to produce was, in fact, the same one she had already given to Pepco, this fact alone is not sufficient to award sanctions where Pepco's request was otherwise appropriate. *See Alexander v. F.B.I.*, 186 F.R.D. 188, 197 (D.D.C. 1999) (finding a subpoena for documents that "were ultimately held to be irrelevant" did not trigger an undue burden justifying sanctions under Fed. R. Civ. P. 45 (c)(1) because the request was not "overbroad or improper"). Moreover, no facts here demonstrate that Pepco acted improperly in enforcing the subpoena. In fact, early in the discovery process, Mrs. Bruce rejected Pepco's offer to negotiate and limit

the "breadth and scope of the records subpoena," including by arranging "to have [Pepco's] forensic expert copy only that material relevant to this case without removing any personal information." Accordingly, we conclude that the trial court did not abuse its discretion by refusing to sanction Pepco under Super. Ct. Civ. R. 45 (c)(1).

### C. Attorney's Fees

Lastly, we address whether the trial court abused its discretion in ordering Mrs. Bruce to pay Pepco $4,742.00 in attorneys' fees for the deposition of Mrs. Bruce's expert. *Synanon Found., Inc. v. Bernstein*, 517 A.2d 28, 38 (D.C. 1986). There are two avenues by which the trial court could award attorney's fees against a non-party as a sanction for noncompliance with a subpoena: (1) through a finding of contempt via Super. Ct. Civ. R. 45 (e), *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 n.8 (1991) (explaining that sanctions under the federal rules "are limited to those incurred as a result of the Rule violation"); or (2) through the court's inherent authority to impose sanctions for bad faith litigation. *Upson v. Wallace*, 3 A.3d 1148, 1165 (D.C. 2010). The trial court did not articulate the statute or rule that it relied on for its award, and did not expressly hold Mrs. Bruce in contempt for failing to comply with the subpoena under Rule 45 (e). *See*

*Delacruz v. Harris*, 780 A.2d 262, 264 (D.C. 2001) ("In the absence of statutory or rule authority, attorney's fees generally are not allowed as an element of damages, costs, or otherwise.") (quoting *Roos v. LaPrade*, 444 A.2d 950, 951 (D.C.1982)). This leaves only the court's inherent authority to sanction a bad faith litigant as the basis for the court's order.

"Generally, under the 'American Rule' each party is responsible for paying its respective fees for legal services." *Assidon v. Abboushi*, 16 A.3d 939, 942 (D.C. 2011). One well-known exception to this rule is a court's authority to impose sanctions "when it finds that the attorney or party has engaged in bad faith litigation." *Jemison v. Nat'l Baptist Convention, USA, Inc.*, 720 A.2d 275, 287 (D.C. 1998) (holding that the court has inherent authority to impose sanctions against a non-party for bad faith litigation). In order to award attorney's fees for bad faith litigation, the party's conduct "must be so egregious that fee shifting becomes warranted as a matter of equity." *In re Jumper*, 984 A.2d 1232, 1247-48 (D.C. 2009) (citation omitted); *see also Synanon, supra*, 517 A.2d at 37 ("[T]he court must scrupulously avoid penalizing a party for legitimate exercise of the right of access to the courts."). "To ascertain whether a litigant has initiated an action in bad faith the court examines whether the claim is entirely without color *and* has been asserted wantonly, for purposes of harassment or delay, or for

other improper reasons . . . ." *Id.* (citation omitted). Additionally, "[a] party's bad faith . . . may manifest itself through procedural maneuvers," such as those that lack justification or are initiated for an improper purpose, "such as harassment or delay." *Id.* (citing *Jung v. Jung*, 844 A.2d 1099, 1108 (D.C. 2004)). We require the trial court to make a finding of bad faith when exercising its inherent authority to impose sanctions for bad faith litigation. *Delacruz, supra*, 780 A.2d at 265; *Charles v. Charles*, 505 A.2d 462, 467 (D.C. 1986).

The trial court found that Mrs. Bruce's "non-compliance with the court's specific directive to provide Pepco with information concerning the methodology [her expert] used" led the court to conclude she was not in "sufficient compliance." However, this finding does not rise to the level of a finding of bad faith. In the discovery context, this court has found bad faith where a litigant "cynically attempt[s] to foil the discovery process," *Synanon Found., supra*, 517 A.2d at 38 (finding abundant evidence of bad faith where a party systematically destroyed discoverable evidence and made false representations to the trial court to obtain favorable discovery rulings), or undertakes filings simply to frustrate the trial court's orders. *See Am. Fed. State, County & Mun. Emps. v. Ball*, 439 A.2d 514, 516 (D.C. 1981) (affirming award of attorney's fees against a party for noncompliance with a subpoena where the trial court "gained the distinct

impression that the [party] [was] attempting to thwart the orders of the [c]ourt" by seeking three protective orders in two jurisdictions, "each time proffering the same rationale"). Here, there is no evidence in the record, nor did the trial court find, that Mrs. Bruce made frivolous claims or undertook procedural maneuvers to harass or delay in bad faith. *In re Jumper*, *supra*, 984 A.2d at 1248. In fact, the trial court ordered the deposition of Mrs. Bruce's expert because, in the trial court's view, allowing Mrs. Bruce to use her expert would potentially aid in bringing her into compliance with the subpoena. We therefore vacate the January 23, 2015, order granting Pepco's request of fees and costs because the trial court abused its discretion in awarding attorneys' fees to Pepco without finding that Mrs. Bruce acted in bad faith.

### III. Conclusion

We affirm the trial court's decision declining to impose sanctions on Pepco, but we reverse and vacate the award of attorney's fees that the trial court levied on Mrs. Bruce. We dismiss Mrs. Bruce's appeal of the trial court's April 24, 2014, order enforcing the subpoena.

*So ordered.*