*Notice: This opinion is subject to format revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CV-351

FRATERNAL ORDER OF POLICE, METROPOLITAN LABOR COMMITTEE, APPELLANT,

v.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-5152-10)

(Hon. John Ramsey Johnson, Trial Judge)

(Argued June 4, 2013       Decided January 2, 2014)

*Paul A. Fenn*, with whom *Erinn M. Maguire* was on the brief, for appellant.

*Mary L. Wilson*, Senior Assistant Attorney General, Office of the Solicitor General, with whom *Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General, were on the brief, for appellee.

Before GLICKMAN and MCLEESE, *Associate Judges*, and REID, *Senior Judge*.

REID, *Senior Judge*: This appeal arises out of a Freedom of Information Act ("FOIA") request made by appellant, the Fraternal Order of Police, Metropolitan Police Labor Committee ("FOP"), for certain documents related to the "Intoxilyzer 5000EN," a device used by the Metropolitan Police Department ("MPD") to

measure the amount of alcohol in a suspect's breath. Appellee, the District of Columbia, initially denied the request on the basis of the FOIA exemption for "investigatory records compiled for law enforcement purposes," set forth in D.C. Code § 2-534 (2010 Supp.);[1] the District's investigation related to errors in the

---

[1] The investigatory records exemption is found in D.C. Code § 2-534 (a)(3):

(a) The following matters may be exempt from disclosure under the provisions of this subchapter: . . .

(3) Investigatory records compiled for law-enforcement purposes, including the records of Council investigations and investigations conducted by the Office of Police Complaints, but only to the extent that the production of such records would:

(A) Interfere with:
(i) Enforcement proceedings;
(ii) Council investigations; or
(iii) Office of Police Complaints ongoing investigations;
(B) Deprive a person of a right to a fair trial or an impartial adjudication;
(C) Constitute an unwarranted invasion of personal privacy;
(D) Disclose the identity of a confidential source and, in the case of a record compiled by a law-enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source;
(E) Disclose investigative techniques and procedures not generally known outside the government; or

(continued…)

Intoxilyzer measurements that resulted in reversals of some convictions for driving while under the influence. In response to the denial of its FOIA request, FOP filed a complaint in the Superior Court against the District, alleging FOIA violations and seeking declaratory and injunctive relief, as well as attorneys' fees and costs. Following the completion of its investigation and during the litigation proceedings, the District produced numerous documents and denied the request for others on grounds of privilege (attorney-client, deliberative process, and work product).[2]

---

(…continued)

> (F) Endanger the life or physical safety of law-enforcement personnel. . . .

[2] The provisions pertaining to the deliberative process, attorney-client and work product privileges are contained in D.C. Code § 2-534 (a)(4) and § 2-534 (e):

> (4) Inter-agency or intra-agency memorandums or letters, including memorandums or letters generated or received by the staff or members of the Council, which would not be available by law to a party other than a public body in litigation with the public body . . .

> (e) All exemptions available under this section shall apply to the Council as well as agencies of the District government. The deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege are incorporated under the inter-agency memoranda exemption listed in subsection (a)(4) of this section, and these privileges, among other privileges that may be found by the court, shall extend to any public body that is subject to this subchapter.

Despite numerous issues presented in the trial court by the parties, the court narrowed the issue to the District's initial denial of FOP's document request. FOP appeals the trial court's rejection of its challenge to the District's initial denial of its request under the investigatory records exemption; and in response to the District's argument that the case is moot, FOP continues to preserve its trial court argument regarding the adequacy of the District's subsequent FOIA disclosures.

First, we hold that the case is not moot because the trial court has not determined whether the District sustained its FOIA burden by disclosing all of the requested documents to which FOP is entitled. Second, we conclude that FOP has not forfeited its challenge to the adequacy of the disclosures that the District made subsequent to its initial response to FOP. Third, we hold that the trial court erred by granting the District's motion for summary judgment. Accordingly, for the reasons stated below, we vacate the trial court's order and remand this case for further proceedings consistent with this opinion.

**FACTUAL SUMMARY**

Relevant background for this appeal reveals that in addition to this FOIA case concerning MPD's use of the Intoxilyzer 5000EN to determine whether

persons who had been stopped by police officers were driving while under the influence of or impaired by alcohol, civil cases pertaining to allegedly erroneous breathalyzer readings were proceeding through the federal district court for the District of Columbia. At various times during the first half of the year 2010, approximately twenty persons sued the District of Columbia and MPD Officer Kelvin King in federal district court, alleging constitutional violations due to their convictions for driving while intoxicated ("DWI"). Those cases were consolidated. *See Molina-Aviles v. District of Columbia*, 824 F. Supp. 2d 4, 5 n.1 (D.D.C. 2011).

The consolidated federal case showed that Officer King, head of MPD's Impaired Driver Support Unit, was "responsible for calibrating the breath test machines and testing them for accuracy." *Id*. at 6. He had been assigned that responsibility for several years.[3] The plaintiffs alleged that they were convicted due to incorrect Intoxilyzer readings, and they averred that the District had announced on February 26, 2010, its awareness of "a potential problem with the accuracy of the [Intoxilyzer] machines." *Id*. at 7-8. The convictions of most of the

___

[3] The responsibility for calibration and testing initially had been assigned to the Office of the Medical Examiner, but around February 2007, the responsibility was delegated to MPD's Impaired Driver Support Unit. *Molina-Aviles*, *supra*, 824 F. Supp. 2d at 6-7 & n.5.

plaintiffs were vacated or dismissed in the Superior Court. On November 14, 2011, the district court denied Officer King's motion to dismiss, without prejudice. *Id*. at 6.

At some point prior to the FOIA request in this case, MPD hired a consultant, Ilmar Paegle, to assist with the breathalyzer program. Mr. Paegle determined that the Intoxilyzer was giving inaccurate readings. In response to the controversy concerning the accuracy of the Intoxilyzer readings MPD opened an investigation, focusing on Officer King, and FOP sought documents relating to the Intoxilyzer.[4]

FOP submitted its FOIA request to MPD and the Office of the Chief Technology Officer ("OCTO") on April 21, 2010. FOP asked for nine categories of materials, and its letter specifically referenced Officer King:

> 1. Any and all documents from October 1, 2008 to April 1, 2010, related to any quality control problems, and or calibration problems with the Intoxilyzer 5000EN[] utilized by the Metropolitan Police Department.

---

[4] The investigation concluded with a finding of insufficient evidence to sustain any allegations of misconduct against any MPD officer. The report recommended that MPD develop "best calibration procedures" for the Intoxilyzer, as well as a program to train its personnel in those procedures.

2. Any and all documents sent from the [MPD] to the District of Columbia's Attorney[] General['s] Office related to any quality control problems, and or calibration problems with the Intoxilyzer 5000EN[] utilized by the [MPD] from October 1, 2008 to April 1, 2010.

3. Any and all documents, emails, and attachments sent or received, from Assistant Chief Patrick Burke's [MPD] email address [] from October 1, 2008 to April 1, 2010, relevant to the [MPD] Intoxilyzer 5000EN.

4. Any and all documents, emails, and attachments sent or received, from Assistant Chief Patrick Burke's [MPD] email address [] from October 1, 2008 to April 1, 2010, related and relevant to any quality control problems, and or calibration problems with the MPD's Intoxilyzer 5000EN.

5. Any and all documents, emails, and attachments sent or received, from Assistant Chief Patrick Burke's [MPD] email address [] or any member of his staff, to the Office of the Attorney General['s] Office, related and relevant to any quality control problems, and or calibration problems with the MPD's Intoxilyzer 5000EN from October 1, 2008 to April 1, 2010.

6. Any and all documents, emails and attachments sent or received from Mr. James Austrich's [MPD] email address [] from October 1, 2008 to April 1, 2010, related to any quality control problems with the Intoxilyzer 5000EN.

7. Any and all documents, emails and attachments sent or received from Mr. Ilmar Paegle's [MPD] email address [] from October 1, 2008 to April 1, 2010, related to any quality control problems, and or calibration problems with the MPD's Intoxilyzer 5000EN.

8. Any and all documents, emails and attachments sent or received BETWEEN Mr. Ilmar Paegle's [MPD] email address [] AND Assistant Chief Patrick

Burke's [MPD] email address [] from October 1, 2008 to April 1, 2010.

9. Any and all documents, emails and attachments sent or received BETWEEN Mr. Ilmar Paegle's [MPD] email address AND Officer Kelvin King's [MPD] email address [] from October 1, 2008 to April 1, 2010.

Natasha Cenatus, MPD's FOIA officer, sent FOP's FOIA request to MPD's Homeland Security Bureau and MPD's Internal Affairs Bureau. She also contacted the FOIA liaison person in both of those Bureaus, Traci Dean and Carnelia Austin, respectively. Ms. Dean informed Ms. Cenatus that Assistant Chief Burke, Mr. Paegle, James Austrich, and Officer King, the persons specifically mentioned in the FOIA request, were searching their "computer hard drive[s], archived e-mail files, paper files and any other records located in or around their office[s]," for responsive documents. Ms. Austin advised Ms. Cenatus that persons in Internal Affairs were conducting a search "for any investigative documents related to [FOP's] FOIA request." Subsequently, Ms. Austin reported that "the investigation concerning the Intoxilyzer 5000EN and the employees [named in the FOIA request] was still an open investigation and . . . no information could be released to the public until the investigation was completed and closed." On May 11, 2010, the day after she received word that the

investigation was ongoing, Ms. Cenatus prepared a denial letter to FOP and a "*Vaughn* Index."

In her May 11 letter to FOP denying its FOIA request, Ms. Cenatus stated, in pertinent part: "Unfortunately, your request for records maintained by the [MPD] is denied pursuant to D.C. Code [§] 2-534 (a)(3): *See Vaughn Index attached.*"[5] The *Vaughn* Index comprised one page. That page referenced "documents/emails related to Intoxilyzer 5000EN," dated "October 2, 2008 – April 1, 2010." The documents were classified as "Confidential." The *Vaughn* Index also listed the FOIA statutory exemptions by subsection, and an "X" had been placed on the line designating "(a)(3)." The following narrative was the last entry on the *Vaughn* Index: "D.C. Code 2-534(a)(3)(A): 'This information is currently under an ongoing investigation with the [MPD]'s Internal Affairs. This document contains records compiled for law-enforcement purposes and such disclosures would interfere with enforcement proceedings, [C]ouncil investigations, OPC

---

[5] Prior to the salutation of the District's letter, the subject was identified as an "FOIA Request for information related to quality control problems and/or calibration problems with the MPD Intoxilyzer 5000EN . . .," but the first sentence of the letter stated: "This is to inform you that we received your Freedom of Information Act requesting [sic] data or audio recording of the shot spotter device." The reference to the "shot spotter device" appears to be an inadvertent error.

ongoing investigations.'" The May 11 letter also stated: "Please know that, under D.C. Official Code § 2-537 and 1 DCMR 412, you have the right to appeal this letter to the Mayor or the Superior [C]ourt of the District of Columbia." The District's May 11 response to FOP's FOIA request fell within the statutory response time.[6]

Approximately two months after receiving the May 11 letter, FOP filed a complaint against the District in the Superior Court. The July 12, 2010, complaint asked the trial court to: (1) "declare that the [District's] failure to adequately respond to the FOIA [r]equest submitted by the [FOP] is unlawful, arbitrary and capricious"; (2) "compel the [District] to produce any and all of the information requested through the FOIA [r]equest . . . within fourteen (14) days of an [o]rder signed by [the trial] [c]ourt"; and (3) "award to the [FOP] its attorneys' fees and costs associated with this action in accordance with D.C. Code . . . § 2-537 (c). . .."

The District answered FOP's complaint on October 15, 2010. In addition to its general denial, the District asserted several defenses, including the following:

---

[6] D.C. Code § 2-532 (c) provides that the District shall respond to all FOIA requests within fifteen working days by either making the requested public records available or notifying the party making the request of the determination that the request had been denied and providing the reasons in support of that determination.

"The District is entitled to withhold documents pursuant to D.C. Code § 2-534, *et seq.*"

On October 26, 2010, while FOP's complaint was still pending, the District sent a letter to FOP, together with 119 pages of material described as "responsive documents," some of which "ha[d] been redacted in order to preserve privacy subject to D.C. Code § 2-534(a)(2). . . ." The District also attached "a *Vaughn* Index, identifying privileged documents." The transmittal letter concluded with the following statement: "As responsive documents, initially withheld due to an ongoing police investigation, have now been produced, we request that FOP stipulate to a dismissal of this case."

The October 26 production was augmented by a second document production on November 23, 2010, consisting of 139 documents and a *Vaughn* Index, identifying privileged documents. The District asserted the following privileges: attorney-client, work product, and deliberative process. In response to FOP's inquiry as to whether the document production was complete, the District stated, in part, on November 24, 2010: "We recently received additional emails that must be reviewed before we can state that what was produced yesterday is the final production in the FOIA matter."

The FOP filed a motion for summary judgment on December 7, 2010, challenging the adequacy of the District's document production. FOP also argued that there were deficiencies in the *Vaughn* indices, including the lack of affidavits to support the claim for exemption based on privilege.[7]

During a December 10, 2010, status conference, the District announced that (1) it would "respond in due course" to FOP's summary judgment motion, and (2) in its search for documents in other "breathalyzer cases," conducted at the direction of litigation counsel, the Chief Technology Officer had produced 40,000 emails. The District had reviewed 8,000 of the emails, found 240 to be responsive to FOP's request, and needed more time to review the remainder of the emails. On January 5, 2011, the District filed both its opposition to FOP's summary judgment motion, and its cross-motion for summary judgment. Thereafter, the parties continued to file pleadings relating to the summary judgment motions.

---

[7] FOP argued, in part, that the District did not provide "any of the required [a]ffidavit evidence to support" its assertion of the deliberative process privilege. Documents withheld on the basis of the deliberative process privilege included an email from Michael Anzallo to Christopher Lojacono, George Dixon, Samuel Golway, and Richard Brady, all of MPD; the email was described as "Discussion between policy-makers re calibration problem and how to address it."

On April 7, 2011, the District forwarded additional documents (871 pages of material) to FOP, along with a thirteen-page *Vaughn* Index, listing and describing documents, and invoking various privileges – work product, deliberative process, and attorney-client.  At the conclusion of its cover transmittal, the District asserted: "Please note that this production satisfies the District's agreement to provide to you additional documentation responsive to the FOP's FOIA request and is not made pursuant to any requirement under the FOIA statute."  Apparently no affidavits accompanied the April 7 production.[8]

The trial court requested supplemental pleadings in June and July 2011, focusing on whether the District's May 2010 response to FOP's FOIA request violated the Act.  FOP filed its supplement on June 24, 2011, challenging the District's use of the investigatory records exemption.  The District responded on July 15, 2011, justifying its reliance on the investigatory records exemption,

---

[8] The District argued in its May 5, 2011, supplement to its motion for summary judgment that FOP was "not entitled under FOIA to any of the material produced on April 7, 2011, because the District fulfilled its obligations under FOIA  with its initial response to FOP on May 11, 2010," and "[t]he only reason [FOP] is receiving any additional documents at all is because (1) [FOP] made its FOIA request concurrent with the Breathalyzer litigation, a series of lawsuits regarding similar subject matter; and (2) upon review of documents collected for the Breathalyzer litigation, counsel have discovered documents that are responsive to [FOP's] FOIA request."  The District said the same was true regarding its October and November document productions.

reiterating its subsequent document production, and claiming that the case was now moot. FOP's July 26, 2011, response again (1) contended that the District resorted to an impermissible assertion of a blanket exemption, stated that the District's response to the FOIA request was untimely and the October, November, and April document productions were immaterial to the initial denial of FOP's request, and (2) characterized the District's mootness argument as "frivolous" because, as of June 16, 2011, the District admitted that it had not produced all responsive documents. Furthermore, FOP asserted, "even if the production were complete, which it is not, the District's production does not address the declaratory relief sought through this action."

The court held hearings on the summary judgment issues on June 16, 2011, July 29, 2011, and September 23, 2011. The June 16, 2011, substantive hearing constituted a wide-ranging discussion of issues presented by FOP and the District, including the proper interpretation of the District's FOIA statute, the privileges invoked by the District during its responses to FOP's FOIA request, the necessity for exhausting administrative remedies, the inadequacy of the initial response, the deficiencies in the *Vaughn* Indices, the complications presented by discovery in other ongoing breathalyzer civil cases, and the issue of whether the District had a continuing obligation to produce responsive documents after the Intoxilyzer

investigation had ended. The trial court appeared most interested in the adequacy of the District's initial response, whether the District wrongfully withheld documents when it responded on May 11, 2010, and whether the District had an ongoing obligation to produce documents after its initial response. The July 29, 2011, hearing concerned a procedural matter. The September 23, 2011, substantive hearing examined the alleged blanket investigatory records exemption claimed by the District, the completeness of the District's document production, and the privileges asserted by the District in its post-May 11, 2010, transmittals.

The trial court denied FOP's motion for summary judgment and the District's cross-motion for summary judgment on October 18, 2011. The court rejected the District's assertion that FOP failed to exhaust its administrative remedies. In addition, the court concluded that the issue as to whether the District's "original document production was valid," required further development of the record regarding whether the District claimed an impermissible "blanket exemption" or "a permissible 'generic determination.'" The trial court viewed the blanket exemption assertion as a "critical issue" that should be decided by the "trier of fact." The District filed a partial consent motion for reconsideration in November 2011, and FOP filed a motion for reconsideration.

On February 24, 2012, the trial court denied FOP's motion for reconsideration, granted the District's motion for summary judgment, and dismissed FOP's complaint. The trial court declared "that the sufficiency of the investigatory records exemption is a matter of law, rather than one of fact," and hence, that issue could be resolved by the court. The court ruled that the District "submitted a valid *generic* determination because the [c]ourt can trace a rational link between 'documents' discussing problems and complaints with the Intoxilyzer and the 'interference,' with the progress of an ongoing investigation relating to the Intoxilyzer." After referencing affidavits submitted by Assistant Chief Burke and Ms. Cenatus,[9] and following its consideration of "the substance of the [District's] response to the FOIA request," the trial court asserted that the exemption claimed by the government was 'functional,'" and that the court could "trace a rational link

---

[9] In his declaration of January 5, 2011, Assistant Chief Burke stated that he "personally reviewed the documents listed in the two *Vaughn* Indices, . . . and marked deliberative privilege." He further asserted that "these documents reflect pre-decisional deliberations among policy-makers regarding various policies, including the policy regarding Intoxilyzer machines." Also included were "drafts of calibration and accuracy reports." He added: "I believe that the disclosure of the referenced documents would seriously discourage government employees from communicating with the candor necessary to effectively carry out their responsibilities." The declaration does not mention any of the individuals referenced in FOP's document request. In her declaration of January 4, 2011, Ms. Cenatus said, in part, that on May 10, 2010, she "was verbally informed by Ms. Austin . . . that the investigation concerning the Intoxilyzer 5000EN and [Officer King, Mr. Paegle, Mr. Austrich, and Assistant Chief Burke] was still an open investigation and that no information could be released to the public until the investigation was completed and closed."

between the ways in which disclosure of the requested documents would interfere with the District's Intoxilyzer investigation." The court added that "although not directly relevant to [its] analysis, it is worth noting that [the District] ultimately did continue to respond to the FOIA request upon the conclusion of the investigation and thereafter, even though it was not required to do so." The court did not accept FOP's argument that the District "prematurely and improperly invoked its exemption," because FOP failed to "provide any evidence supporting the allegation that the [District] knew when the investigation would close or that the [District] intentionally made its FOIA response earlier in order to avoid producing the investigation documents after the investigation closed." The court did not address the District's mootness contention.

## ANALYSIS

### *The Arguments of the Parties*

At the beginning of its argument, FOP notes that "the parties briefed numerous issues relating to the District's multiple productions of documents . . . ," but that "the Superior Court narrowed the consideration to the discrete issue of whether the District supported its initial claim to the investigatory records

exemption under the FOIA" in its response of May 11, 2010. FOP contends that the Superior Court improperly granted the District's motion for summary judgment on the narrow issue of whether the District supported its initial claim to the investigatory records exemption under D.C. Code § 2-534 (a)(3)(A), and that "[t]he trial court erred in concluding that [the District's] blanket assertion of the [investigatory] exemption was supported under the [District's] FOIA based upon belated production of documents that the District provided after the initiation of litigation in this action, and the belated [a]ffidavits submitted by the District in support of their actions. . . ." FOP further insists that the District failed to: (1) "provide the Superior Court with a basis to infer that the disclosure of [drafts of calibration accuracy reports, mentioned in Assistant Chief Burke's affidavit] would have interfered with any ongoing investigation" at the time it claimed the investigatory records exemption on May 11, 2010, (2) "engage in a document-by-document review," and (3) "identify categories of documents to support a generic claim to the [investigatory records] exemption." FOP claims that the District's "voluntary" production of documents "that it claimed to be outside of the scope of the FOIA Request did not cure this . . . FOIA violation."

The District urges that the case is moot because the government voluntarily produced all non-exempt documents requested by FOP. Furthermore, the District

claims that "FOP challenges only the adequacy of MPD's initial response to the FOIA request and does not challenge whether MPD's production as a whole was legally adequate." Moreover, the District argues that "FOP did not ask the court to resolve any disputed facts about whether production was complete or the *Vaughn* indices adequately documented the claimed exemptions and redactions." The District further maintains that FOP "does not argue on appeal [] that the law-enforcement exception does not apply here in light of MPD Internal Affairs' investigation of Officer King," and rather, confines its argument to the assertion that the District "claimed the exemption 'without a proper and complete explanation or any of the required backup information.'" The District supports the trial court's conclusion that it "claimed a valid and 'functional' exemption," based on its investigation about the Intoxilyzer.

In its reply brief FOP takes issue with the District's contention that it "provided all of the documents responsive to the FOIA Request"; FOP responds: "The District is simply incorrect." Furthermore, FOP states that even assuming "the District did provide all of the responsive documents," it did not respond within the fifteen-day required statutory period, and that FOP "had *an absolute right* to receive within fifteen (15) days of the District's receipt of the FOIA [r]equest" the documents requested or "notification of denial of access with

explanation of 'the reasons therefore' and support for those reasons." FOP cautions that if this court does not follow the statutory time limit, the required 15-day response provision would become "meaningless," and such a ruling "would discourage FOIA requests by allowing the District to embroil FOIA requestors in litigation before escaping liability by simply providing a tardy response." In addition, FOP argues, and reiterates its position, that neither the declaration provided by Assistant Chief Burke nor that submitted by Ms. Cenatus provides support for the District's assertion of the investigatory records exemption. The Burke declaration, submitted after the District began producing documents, "is specifically focused on the deliberative process privilege and is utterly silent on the issue of investigatory records"; the Cenatus declaration "does not show that the District defined its documents categorically, conducted a document-by-document search or explained how the release of the documents would interfere with an investigation."

### *Legal Standards and Principles*

We now set forth the legal standards and principles that guide our analysis. Our review of the trial court's grant of summary judgment to the District is *de novo*. *Fraternal Order of Police v. District of Columbia*, No. 12-CV-1476, 2013

D.C. App. LEXIS 779, at *8 (D.C. Nov. 7, 2013).  We view the record in the light most favorable to the party opposing summary judgment."  *Id*. (citation omitted).  "Summary judgment is appropriate only when the record, including pleadings together with affidavits, indicates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *District of Columbia v. Fraternal Order of Police*, 75 A.3d 259, 266 (D.C. 2013) (quoting *Padou v. District of Columbia*, 29 A.3d 973, 980 (D.C. 2011)) (internal quotation marks omitted).  We determine "whether the agency has sustained its burden of demonstrating the documents requested are exempt from disclosure under the FOIA."  *Id*. (quoting *Multi AG Media LLC v. Department of Agric*., 380 U.S. App. D.C. 1, 4, 515 F.3d 1224, 1227 (2008)) (internal quotation marks omitted).

Given the broad disclosure policy reflected in the District's FOIA, we "construe[] [the Act] with the view toward expansion of public access and the minimization of costs and time delays to persons requesting information."  *Fraternal Order of Police v. District of Columbia*, *supra*, 2013 D.C. App. LEXIS 779, at *9 (citing D.C. Code § 2-531 (2012 Repl.)).  "Therefore, 'the provisions of the Act giving citizens the right of access are to be generously construed, while the statutory exemptions from disclosure are to be narrowly construed, with

ambiguities resolved in favor of disclosure." *Id*. at *9-10 (quoting *Riley v. Fenty*, 7 A.3d 1014, 1018 (D.C. 2010)).

Generally, a case is moot "when the issues presented are no longer 'live' or the parties lack 'a legally cognizable interest in the outcome.'" *Settlemire v. District of Columbia Office of Emp. Appeals*, 898 A.2d 902, 904-05 (D.C. 2006) (citation omitted). "[W]hile an appeal is pending, an event that renders relief impossible or unnecessary also renders that appeal moot." *Id*. at 905 (quoting *Vaughn v. United States*, 579 A.2d 170, 175 n.7 (D.C. 1990)). "In general, 'once the government produces all the documents a plaintiff requests, [the] claim for relief under the FOIA becomes moot." *Walsh v. United States Dep't of Veterans Affairs*, 400 F.3d 535, 536 (7th Cir. 2005) (quoting *Anderson v. United States Dep't of Health & Human Servs.*, 3 F.3d 1383, 1384 (10th Cir. 1993) (other citations omitted)); *Mullen v. United States Army Criminal Investigation Command*, 1:10cv262 (JCC/TCB), 2010 U.S. Dist. LEXIS 58939, at *8 (E.D. Va. June 14, 2010) (where agency agreed to produce requested documents within two weeks, question as to whether they were withheld under the law enforcement exemption is moot). However, "in instances where an agency has released documents, but other related issues remain unresolved, courts frequently will not dismiss the action as moot." *McKinley v. Federal Deposit Ins. Corp.*, 756 F. Supp.

2d 105, 110 (D.D.C. 2010) (internal quotation marks and citations omitted). Mootness is a question of law which we review *de novo*. *See Walsh*, *supra*, 400 F.3d at 536.

"In a FOIA case, the burden of proof is always on the agency to demonstrate that it has fully discharged its obligations under the FOIA." *McKinley*, *supra*, 2010 U.S. Dist. LEXIS 135965, at *6-7 (quoting *Department of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989)). Moreover, "the standard for determining whether a case or controversy is mooted by a defendant's voluntary conduct is 'stringent.'" *Northwestern Univ. v. United States Dep't of Agric.*, 403 F. Supp. 2d 83, 85 (D.D.C. 2005). Consequently, "[i]n determining mootness, the court has to make 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id*. (quoting *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 189 (2000)). "The movant must also show that 'interim relief and events have completely and irrevocably eradicated the effects of the alleged violation.'" *Id*. (citation omitted). "The court . . . retains jurisdiction of a FOIA case if it is not convinced that the agency has released all nonexempt material." *Id*. at 86 (citing *Perry v. Block*, 221 U.S. App. D.C. 347, 351, 684 F.2d 121, 125 (1982)).

*The Investigatory Records Exemption*

The District's FOIA exemption for investigatory records is modeled on the corresponding exemption in the federal FOIA, 5 U.S.C. § 552 (b)(7)(A) (2012).[10]

---

[10] 5 U.S.C. § 552 (a) sets forth the federal disclosure policies, and 5 U.S.C. § 552 (b) contains the statutory exemptions:

> § 552. Public information; agency rules, opinions, orders, records, and proceedings
> (a) Each agency shall make available to the public information as follows:
>
> . . . .
>
> (b) This section does not apply to matters that are—

 . . . .

> (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a
>
> (continued…)

*Barry v. Washington Post Co*., 529 A.2d 319, 321 (D.C. 1987). After recognizing that FOIA statutory exemptions must be read "narrowly" to safeguard "the strong public policy favoring disclosure about governmental affairs and the acts of public officials," this court "h[e]ld that the phrase 'investigatory records compiled for law enforcement purposes' in exemption 3 [of the District's FOIA] refers only to records prepared or assembled in the course of 'investigations which focus directly on specifically alleged illegal acts, illegal acts of particular identified [persons], acts which could, if proved, result in civil or criminal sanctions.'" *Id*. at 321-22 (quoting *Rural Hous. Alliance v. United States Dep't of Agric*., 162 U.S. App. D.C. 122, 130, 498 F.2d 73, 81 (1974)) (third alteration in original). Thus, to satisfy D.C. Code § 2-534 (a)(3)(A)(i), investigatory records compiled for law enforcement purposes that would interfere with enforcement proceedings, the District has the burden of showing: (1) the documents requested by FOP have been "compiled for law enforcement purposes," and (2) disclosure of those

---

(…continued)

confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual. . . .

documents would "interfere with enforcement proceedings." *Bevis v. Department of State*, 801 F.2d 1386, 1388 (D.C. Cir. 1986).

What Congress meant by interference with enforcement proceedings was "the release of information in investigatory files prior to the completion of an actual, contemplated enforcement proceeding." *National Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 232 (1978). "[S]o long as the investigation continues to gather evidence for a possible future criminal case, and that case would be jeopardized by the premature release of the evidence, [the investigatory records exemption] applies." *Juarez v. Department of Justice*, 518 F.3d 54, 59 (D.C. Cir. 2008). However, "where an agency fails to [demonstrate] that the . . . documents [sought] relate to any ongoing investigation or . . . would jeopardize any future law enforcement proceedings, [the investigatory records exemption] would not provide protection to the agency's decision." *Robbins Tire & Rubber Co.*, *supra*, at 235 (alterations in original) (internal quotation marks and citation omitted).

A "blanket exemption," that is, "an exemption claimed for all records in a file simply because they are in a file," is impermissible under the investigatory records exemption. *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d

64, 66 (D.C. Cir. 1986). But, "courts [may] make generic determinations that with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records . . . would generally interfere with enforcement proceedings." *Id.* at 67 (quoting *Robbins Tire & Rubber Co.*, *supra*, 437 U.S. at 236) (internal quotation marks omitted).

Under a generic approach, an agency justifies its non-disclosure of documents as investigatory records based on a functional category (or categories) that "allows the court to trace a rational link between the nature of the document and the alleged likely interference." *Id.* In that regard, the agency has a "three-fold task"; it must: (1) "define its categories functionally," (2) "conduct a document-by-document review in order to assign documents to the proper category," and (3) "explain to the court how the release of each category would interfere with enforcement proceedings." *Bevis*, *supra*, 801 F.2d at 1389-90. An agency must sustain its burden "by identifying a pending or potential law enforcement proceeding or providing sufficient facts from which the likelihood of such a proceeding may reasonably be inferred." *Durrani v. United States Dep't of Justice*, 607 F. Supp. 2d 77, 90 (D.D.C. 2009) (citation omitted). "If the generic index submitted by the government is not sufficient to sustain the [investigatory records exemption], then the [trial] court may request more specific, distinct

categories so that it may more easily determine how each category might interfere with enforcement proceedings"; "[t]he chief characteristic of an acceptable taxonomy should be functionality — that is, the classification should be clear enough to permit a court to ascertain how each . . . category of documents, if disclosed, would interfere with the investigation." *Crancer v. United States Dep't of Justice* (*In re Department of Justice*), 999 F.2d 1302, 1310 (8th Cir. 1993) (internal quotation marks and citations omitted).

### *The District's Assertion of Mootness*

Mootness is a justiciability issue which implicates the power of the court to entertain the lawsuit.[11] We first consider the District's argument that this case is moot because the government voluntarily produced documents responsive to FOP's request. The trial court did not address the question of mootness despite the fact that the District explicitly raised it on July 15, 2011, in its supplemental pleading requested by the court. In its supplemental pleading, the District stated: "By providing [FOP] with a complete response no later than October 26, 2010, and

---

[11] Because this court is not an Article III court, the constitutional "case or controversy" requirement is not directly applicable to us; nevertheless, we generally choose to adhere to federal mootness principles. *See, e.g., Saucier v. Countrywide Home Loans*, 64 A.3d 428 (D.C. 2013).

even taking into account the later, supplemental productions, the District has mooted the controversy." FOP took issue in the trial court with the District's assertion of mootness, arguing in its July 26, 2011, pleading that the mootness argument was "frivolous," and that the case was not moot, not only because there remained an outstanding question as to whether the District's document production was complete, but also because "even if the production were deemed complete, significant legal issues would still remain unresolved," including FOP's request for declaratory relief and the timeliness of the District's response.

On appeal, the District contends that: "Regardless of the propriety of the District's original response to the FOIA request invoking a generic law enforcement exception to production based on the then-ongoing internal MPD investigation, this case is now moot because the District subsequently produced all requested documents," and hence, "FOP received all the non-exempt documents it sought in this FOIA action." The District further maintains that (1) a case is moot "even where an agency's initial response was tardy or incomplete," (2) "FOP's 'desire for vindication,' a declaration that the original denial was improper, is 'inadequate' to create a live controversy and thus prevent a finding of mootness," (3) its claim of mootness "'is not overcome by [FOP's] interest in being awarded attorney's fees,'" (4) this court should not exercise its discretion under the "capable

of repetition, yet evading review" doctrine because "[t]he precise issue FOP presses is fact-bound, turning on the particulars of MPD's initial response to the FOIA request" and because "FOP did not preserve its entitlement to ask for such an exercise of discretion," and (5) "FOP did not ask the court to resolve any disputed facts about whether production was complete or the *Vaughn* indexes adequately documented the claimed exemptions and redactions."

Our review of the record satisfies us that this case is not moot. The District asserts that an agency's production of all requested, non-privileged documents generally moots a FOIA case or controversy. *See Walsh*, *supra*, 400 F.3d at 536. While that is true, the problem here is that the trial court has not determined whether the District has sustained its FOIA burden by disclosing all of the requested documents to which FOP is entitled, even though the District contended in the trial court that it has produced all responsive documents, and in contrast, FOP questioned the adequacy of the District's production. Hence, we cannot agree that the case is moot.[12]

---

[12] FOP maintains in its reply brief that the District's initial response was untimely. We addressed the timeliness issue in *Fraternal Order of Police v. District of Columbia*, *supra*, 2013 D.C. App. LEXIS 779, at *37-39. There, we rejected FOP's timeliness argument, distinguishing between "timeliness" and "sufficiency." We concluded that the District's response was timely because it "responded in good faith to a FOIA request within the time prescribed by the

(continued…)

Nor can we agree with the District's contention that FOP has forfeited its challenge to the adequacy of the disclosures that the District made subsequent to its initial response to FOP.  Not only did FOP challenge the adequacy of the District's subsequent document production in the trial court, but in its reply brief on appeal and in response to the District's argument concerning mootness, FOP reiterated its position that the District's disclosure was inadequate.  Thus, we cannot say on this record that FOP forfeited its challenge to the District's subsequent document production.

### *The Summary Judgment Motion*

We are constrained to hold that the grant of summary judgment to the District was improper because the trial court committed an error of law.  Specifically, the trial court erred in determining as a matter of law that the District "submitted a valid generic determination" with respect to its initial response based on the investigatory exemption.  The court based this conclusion on the Burke and

---

(…continued)

statute, enabling the requestor to seek relief in court for any perceived deficiencies such as the inadequacy of the agency's search for responsive documents or the unavailability of a claimed exemption."  *Id*. at *38-39.  Here, the District's initial response to FOP's FOIA request fell within the statutory 15-day period, and hence, it was timely.  In addition, FOP does not contend on appeal that the District acted in bad faith.

Cenatus declarations, and asserted that the court could "trace a rational link between 'documents' discussing problems and complaints with the Intoxilyzer and the 'interference,' with the progress of an ongoing investigation relating to the Intoxilyzer." However, the District's May 11, 2010, letter contains only one substantive sentence: "Unfortunately, your request for records maintained by the [MPD] is denied pursuant to D.C. Code § 2-532 (a)(3): *See Vaughn Index attached.*" The accompanying *Vaughn* Index consisted of one page and the District did not submit any explanatory affidavits or declarations. The *Vaughn* Index identified the "subject" as "documents/emails related to problems/complaints involved with MPD's use of Intoxilyzer 5000EN," presumably the category of documents for which the District was claiming the investigatory records exemption. With respect to how disclosure of this category of documents would interfere with law-enforcement proceedings under D.C. Code § 2-534 (a)(3)(A)(i), the District included one sentence: "This document contains records compiled for law-enforcement purposes and such disclosure would interfere with enforcement proceedings, [C]ouncil investigations, OPC ongoing investigations."

As we said in *Fraternal Order of Police v. District of Columbia*, *supra*, the "omission [of an affidavit or declaration] was not necessarily fatal," because "[t]he

District can satisfy its burden to provide 'a sufficiently detailed description of what it is refusing to produce and why' by including all the necessary information on a *Vaughn* Index alone"; however, "the index must supply enough information to enable the court to assess whether the District properly invoked the privilege." *Id*. 2013 D.C. App. LEXIS 779, at *23 (quoting *Fiduccia v. Department of Justice*, 185 F.3d 1035, 1042 (9th Cir. 1999)).  Here, the *Vaughn* Index submitted by the District on May 11, 2010, was insufficient because it contained only one conclusory statement that repeated statutory language, and that did not "enable the [trial] court to assess the propriety of the District's decision to withhold the material." *Id*. at *24.  Indeed, the *Vaughn* Index offered no insight into the specific documents that the District was withholding.  While we can infer from the *Vaughn* Index that the functional category is "documents/emails related to problems/complaints involved with MPD's use of Intoxilyzer 5000En," it is not clear that the District "conduct[ed] a document-by-document review" to make certain that all documents withheld fell into that category; nor does the *Vaughn* Index "explain to the court how the release of this category of documents would interfere with enforcement proceedings." *Bevis*, *supra*, 801 F.2d at 1390.

In reaching its conclusion that the District satisfied all of the *Crooker* requirements for a generic determination, the trial court relied on the January 2011

declarations of Assistant Chief Burke and Ms. Cenatus. The substance of the Burke declaration was limited to one page, made no mention of any investigation, and covered only the October 26 and November 23, 2010, documents for which the "deliberative process privilege" was asserted. Moreover, the Burke declaration said nothing about interference with a law-enforcement proceeding, and instead, stated that "the disclosure of the referenced documents would seriously discourage government employees from communicating with the candor necessary to effectively carry out their responsibilities," an apparent effort to show that the deliberative privilege applied. Unlike Assistant Chief Burke, who was responsible for oversight of MPD's Special Operations Division and Tactical Information Divisions, Ms. Cenatus as MPD's FOIA officer had no personal knowledge about the Intoxilyzer or the District's investigation, and she specifically stated in her declaration that she "did not personally review [documents sent to her by the District on August 25, 2010, and September 27, 2010] to determine which ones, if any, would be responsive to the FOIA search." Under these circumstances, the District was not entitled to summary judgment as a matter of law.

Furthermore, the question as to whether the District released all non-privileged documents after its initial denial, as it contends, presents genuine issues of material fact, even considering the Burke and Cenatus declarations. The Burke

and Cenatus declarations were submitted prior to the District's April 7, 2011, disclosures for which it claimed various privileges. Apparently, no explanatory declaration was submitted with the April 7, 2011, document production, and in several instances for documents referenced prior to April 2011, the Index does not demonstrate why the documents are shielded from disclosure by privilege. For example, several documents generated between February and March 2010, are "forms" described as "draft calibration and accuracy checklist" for which the District asserts the deliberative process privilege, but it is not readily apparent why these forms implicate the deliberative process. We explained the deliberative process privilege in *Fraternal Order of Police v. District of Columbia*, *supra*, indicating that the information withheld under this privilege "must be both 'predicisional' and 'deliberative,'" that is, it must have been "prepared in order to assist an agency decision maker in arriving at his decision," and "reflect[] the give and take of consultative process." 2013 D.C. App. LEXIS 779 at *12. The description of the documents as "draft calibration and accuracy checklist" does not "pinpoint an [MPD] decision or policy to which these [forms] contributed," nor is one able to infer from the *Vaughn* Index that the forms were part of a consultative process. *Id*. at *12-13.

Accordingly, because (1) the case is not moot, (2) FOP has not forfeited its challenge to the adequacy of the District's disclosures subsequent to its initial response to FOP's document request, and (3) the trial court improperly granted summary judgment to the District, we vacate the trial court's order and remand this case so that the trial court may (a) consider the implications of the District's subsequent document production, and (b) resolve the merits of the dispute, whether (i) by way of summary judgment under a proper understanding of the relevant legal principles or (ii) after a trial.

*So ordered.*