*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CV-164

FRATERNAL ORDER OF POLICE,
METROPOLITAN LABOR COMMITTEE, APPELLANT,

v.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-4125-12)

(Hon. Anthony Epstein, Trial Judge)

(Argued December 4, 2014                    Decided April 2, 2015)

*Barbara E. Duvall*, with whom *Paul A. Fenn* was on the brief, for appellant.

*Mary L. Wilson*, Senior Assistant Attorney General, with whom *Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the brief, for appellee.

Before WASHINGTON, *Chief Judge*, and THOMPSON and BECKWITH, *Associate Judges*.

BECKWITH, *Associate Judge*: The Fraternal Order of Police, Metropolitan Labor Committee, appeals from a trial court order dismissing its Freedom of Information Act claims as moot and denying its application for attorney's fees. We affirm.

**I.**

On February 9, 2012, the Fraternal Order of Police (FOP) submitted a formal request for documents to the District of Columbia Office of the Chief Technology Officer (OCTO) pursuant to the D.C. Freedom of Information Act (FOIA), D.C. Code §§ 2-531 to -540 (2012 Repl.). FOP requested emails and attachments sent among four D.C. government email addresses during a specified time period, as well as all emails containing the word "recruiting" sent and received by one D.C. government address. According to the District, these email addresses belonged to "high-ranking members" of the Metropolitan Police Department (MPD). MPD acknowledged on February 14, 2012, that it received the FOIA request from OCTO, triggering the fifteen-day statutory time period to respond,[1] and MPD advised FOP that it "may" exercise the "10 business day extension delay"[2] due to the breadth of the request and the need to coordinate with other divisions within the department.

MPD did not produce any documents within twenty-five business days. On March 28, 2012, MPD notified FOP that the request was "delayed due to the volume of various emails pursuant to [FOP's] request," stating that the response

---

[1] *See* D.C. Code § 2-532 (c) (2012 Repl.).

[2] *See* D.C. Code § 2-532 (d) (2012 Repl.).

was being worked on "[p]resently" and that MPD would notify FOP at its "earliest convenience when the response [was] completed."

On May 14, 2012, FOP sued the District (for the actions of OCTO and MPD) pursuant to D.C. Code § 2-537 (a-1) (2012 Repl.) to compel a response. The District filed an answer on November 9, 2012, admitting that "it had not provided documents to Plaintiff in response to its FOIA request dated February 9, 2012." The District claimed that its acts were "reasonable, lawful, and necessary under [the] circumstances, and in accord with all applicable regulatory, statutory, common law and constitutional requirements, and standards of care."

FOP moved for summary judgment that same day, noting that the District did not cite any legal authority to justify its failure to provide all responsive material within the statutory timeframe.[3] FOP sought an order compelling the District to produce all requested documents, a declaratory judgment that the District's failure to respond timely was "unlawful, arbitrary, and capricious," and attorney's fees and costs pursuant to D.C. Code § 2-537 (c) (2012 Repl.).

On December 7, 2012—the due date for the District's opposition to FOP's motion for summary judgment—the District provided FOP the documents it had

---

[3] Unlike the federal FOIA, the D.C. FOIA provides no safe harbor for an agency to delay its response. *See* 5 U.S.C. §§ 552 (a)(3)(A) & (a)(6)(B).

requested, including a *Vaughn* index[4] explaining all redactions and withholdings. The District also moved to dismiss the case as moot because "there is no injunctive relief the Court could award" and FOP's "remaining interest in receiving a declaration from the Court that the District violated the law is not a sufficient basis for the Court to retain jurisdiction."

FOP challenged the completeness of the District's response on the ground that it did not include an affidavit describing the search, but it did not specifically challenge the adequacy of the documents received or the legal basis for any withheld documents detailed in the *Vaughn* index. The trial court first concluded that the District was not required to provide an affidavit because FOP had not challenged the adequacy of the search.[5] And because there was no live dispute as to the completeness of the response, the trial court dismissed as moot FOP's request for an injunction as well as its request for a declaratory judgment that the District's production was untimely. The trial court recognized a live dispute with regard to attorney's fees, however, and proceeded to analyze FOP's eligibility and entitlement to fees.

---

[4] A *Vaughn* index itemizes any withheld documents and explains why each document is exempt from disclosure. *See Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

[5] FOP does not challenge this ruling on appeal.

As to eligibility, the trial court first ruled that the "catalyst theory" applies to D.C. FOIA actions, adopting the standard in the federal FOIA statute that a party is eligible for attorney's fees if its claim is not insubstantial and it obtains relief through a voluntary or unilateral change in position by the agency. *See* 5 U.S.C. § 552 (a)(4)(E)(ii)(II) (2012); *cf. Summers v. U.S. Dep't of Justice*, 569 F.3d 500, 503 (D.C. Cir. 2009). The court found that FOP's claim was not insubstantial but that there was no causal connection between FOP's FOIA suit and the District's production of documents on December 7, 2012. While the court recognized it was "obviously not a coincidence that the District produced the documents and the *Vaughn* index on the very day that its opposition to FOP's summary judgment motion was due," it concluded that an inference based solely on timing was insufficient to establish that the District's production was *because of* the lawsuit. Instead, the court noted that the District acknowledged the FOIA request and promised to provide a response before the suit was filed and that its ultimate production was a "major undertaking" that could not have been completed within twenty-five days. The court further ruled in the alternative that even if FOP was eligible for attorney's fees, it was not entitled to fees under the four-factor test in *Fraternal Order of Police v. District of Columbia*, 52 A.3d 822 (D.C. 2012) (*FOP 2012*).

FOP appeals the trial court's rulings with respect to the mootness of its

request for a declaratory judgment and both its eligibility and entitlement for attorney's fees.

## II.

As a general rule, the mootness doctrine prevents courts from deciding cases "when the issues presented are no longer 'live' or [when] the parties lack a legally cognizable interest in the outcome." *Settlemire v. District of Columbia Office of Emp. Appeals*, 898 A.2d 902, 904-05 (D.C. 2006) (quoting *McClain v. United States*, 601 A.2d 80, 81 (D.C. 1992)). This court has greater flexibility to hear cases than the federal courts, which are limited by the case or controversy requirement of Article III of the Constitution, although we typically "follow[] the principles of standing, justiciability, and mootness" for prudential reasons. *Atchison v. District of Columbia*, 585 A.2d 150, 153 (D.C. 1991) (quoting *District of Columbia v. Waters*, 319 A.2d 332, 338 n.13 (D.C. 1974), and citing *Lynch v. United States*, 557 A.2d 580, 582 (D.C.1989) (en banc)). In any event, in the context of FOIA cases, we routinely look to federal law to interpret analogous provisions in our own Act. *FOP 2012*, 52 A.3d at 829.

In *Fraternal Order of Police v. District of Columbia*, 82 A.3d 803 (D.C. 2014) (*FOP 2014*), we endorsed (in dicta) the general rule that an agency's production of all requested non-privileged documents moots a FOIA case. *Id.* at

816-17 (citing *Walsh v. U.S. Dep't of Veterans Affairs*, 400 F.3d 535, 536 (7th Cir. 2005)). While this statement is in accord with several federal courts of appeal, *see, e.g.*, *Papa v. United States*, 281 F.3d 1004, 1013 (9th Cir. 2002); *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982), it does not specify which particular claim in a FOIA case becomes moot upon adequate and complete production of documents by the District.[6] FOP's request for an injunction ordering the District to produce documents was certainly mooted once the trial court determined that the District had completely and adequately done so. *See Mbakpuo v. Ekeanyanwu*, 738 A.2d 776, 782 (D.C. 1999) (noting that an injunction may issue only when such relief is needed). FOP contends, however, that the case is not moot with respect to its requests for a declaratory judgment and for attorney's fees. We address each issue in turn.

The trial court here ruled that the District's production was not timely, and FOP also seeks a declaratory judgment to that effect.[7] In *Settlemire*, this court explained that a "desire for vindication"—that is, "a declaration that a person was

---

[6] *Cf. FOP 2014*, 82 A.3d at 816-17 (holding that a FOIA case was not moot after the District's document production because FOP actively contested the adequacy of the District's production).

[7] Like the federal FOIA, there is no provision in the D.C. FOIA for an award of money damages when the government unlawfully delays production of documents. *Cf. Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 675 n.1 (7th Cir. 2009).

wronged"—is inadequate to create a live controversy. 898 A.2d at 907. The same justiciability rules apply to requests for declaratory judgment. *Local 36 Int'l Ass'n of Firefighters v. Rubin*, 999 A.2d 891, 896 (D.C. 2010) (citing *Smith v. Smith*, 310 A.2d 229, 231 (D.C. 1973)). A declaration that the District's production was not timely does not create "a possibility that further penalties or legal disabilities can be imposed as a result of the judgment." *McClain v. United States*, 601 A.2d 80, 81 (D.C. 1992) (quoting *Holley v. United States*, 442 A.2d 106, 107 (D.C. 1981)). FOP's request for such a declaration is therefore moot once the trial court determines that the District has adequately and completely complied with the FOIA request. *Cf. FOP 2014*, 82 A.3d at 816-17.

FOP contends in its brief that this holding will "render the District beyond the reach of the Superior Court's enforcement powers under the D.C. FOIA as long as the District manages to make some production no matter how many months, or in some cases, years, have passed since the underlying FOIA Request was issued." On the contrary, trial courts can order the District to produce the requested documents if the District has not already done so. Moreover, issuing a declaratory judgment after the District produces documents does nothing to "enforce" FOIA's time limits, as it does not direct the District to *do* anything. A declaration that the District's production was unlawfully late cannot undo that lateness or force the District to be timely in future cases.

Turning to attorney's fees, the trial court ruled that FOP's request for fees was not mooted by the District's complete and adequate production of documents. We agree. In *Frankel v. District of Columbia*, No. 13-CV-495 (D.C. Feb. 12, 2015), we reaffirmed that the "catalyst theory" applies to determine whether a party is eligible for fees under D.C. FOIA. Slip op. at 10-11. We rejected the District's argument that *McReady v. Department of Consumer and Regulatory Affairs*, 618 A.2d 609 (D.C. 1992), which recognized the catalyst theory for D.C. FOIA cases, was undercut by intervening opinions of the United States Supreme Court and this court rejecting the catalyst theory in non-FOIA contexts. *Id.* at 6-10 (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 601 (2001), and *Settlemire*, 898 A.2d at 907). As a result, a party is eligible for fees "when he demonstrates a 'causal nexus . . . between the action [brought in court] and the agency's surrender of the information.'" *Id.* at 10-11 (quoting *McReady*, 618 A.2d at 616) (alterations in original).[8]

Under this standard, the production of documents cannot moot a request for attorney's fees because a plaintiff is eligible for fees when his lawsuit caused that production. *See Cornucopia*, 560 F.3d at 676-77 (analyzing eligibility for fees

---

[8] *Frankel* noted that this standard "is parallel to" the federal standard, *id.* at 11 n.8, which the trial court applied in this case.

under FOIA after finding that production mooted request for declaratory judgment). In fact, the District's production of documents created the basis for FOP's claim that it was a prevailing party. There is a live controversy as to whether FOP's claim was in fact a catalyst for the production of documents, and if FOP prevails in that determination, it will be eligible for fees. The parties therefore retain a legally cognizable interest in the outcome and FOP's request for attorney's fees is not moot. *Settlemire*, 898 A.2d at 904-05.

## III.

### A.

We next turn to whether FOP was eligible for fees in this case under the catalyst theory, looking to case law interpreting the federal FOIA as we did in *Frankel* and *FOP 2012*. We review the trial court's ruling for clear error, as whether a causal nexus exists is a "question of fact entrusted to the [trial court]." *Weisberg v.U.S. Dep't of Justice*, 745 F.2d 1476, 1496 (D.C. Cir. 1984) (citations omitted); *accord McReady*, 618 A.2d at 616 (holding that the trial court's "finding" that the release of records was not prompted by the lawsuit had "ample support in the record and we will not disturb it").[9] The findings of fact underlying

---

[9] *Cf. Majeska v. District of Columbia*, 812 A.2d 948, 950 (D.C. 2002) (noting that proximate cause is generally a question of fact that becomes a question

(continued…)

this conclusion are also reviewed under a clear error standard. *Public Law Educ. Inst. v. U.S. Dep't of Justice*, 744 F.2d 181, 183 (D.C. Cir. 1984). The FOIA litigant seeking fees bears the burden of showing that his suit was the causal nexus for the production of documents. *Id.*; *Burka v. U. S. Dep't of Health & Human Servs.*, 142 F.3d 1286, 1288 (D.C. Cir. 1998).

The D.C. Circuit has outlined several factors for making the causal nexus determination. First, trial courts should consider the "temporal relation" between the filing of the complaint and the subsequent release of documents, although timing alone does not establish causation as a matter of law. *Pub. Law Educ.*, 744 F.2d at 184 n.5. Courts should also consider whether the government made a good faith effort to respond to the initial request, whether the government has pursued the request with due diligence, whether the search is time-consuming, and whether the government has a significant number of other requests pending at the time. *See Cox v. U.S. Dep't of Justice*, 601 F.2d 1, 6 (D.C. Cir. 1979). Finally, courts should consider whether the agency has provided a reasonable explanation that its production of documents was not causally connected to the lawsuit. *Compare, e.g.*, *Bigwood v. Def. Intelligence Agency*, 770 F. Supp. 2d 315, 321 (D.D.C. 2011)

---

(…continued)
of law only when the record contains insufficient evidence to support "a rational finding of proximate cause").

(noting that the defendant provided "a detailed timeline of events leading up to the disclosure of information" explaining why the lawsuit was not a catalyst for the release of documents), *with Marschner v. Dep't of State, Sec'y of State*, 470 F. Supp. 196, 200 (D. Conn. 1979) (finding a causal nexus when the agency "now offers no explanation for the delay"), *Baker v. U.S. Dep't of Homeland Security*, No. 3:11-CV-588, 2012 WL 5876241, at *5 (M.D. Pa. Nov. 20, 2012) (finding a casual nexus when there were "several unexplained gaps" in the agency's activity processing the FOIA request before the suit), *and Frye v. EPA*, CIV. A. 90-3041, 1992 WL 237370, at *3 (D.D.C. Aug. 31, 1992) (noting that the government "offered no excuse for its delay of over two years"). The FOIA requester need not demonstrate that the government would not have responded to the request for documents absent the lawsuit. *See Fund for Const'l Gov't v. National Archives & Records Serv.*, 656 F.2d 856, 871 (D.C. Cir. 1981) ("[T]he mere fact that a FOIA requester might have ultimately received the documents in question in the absence of litigation is not a sufficient basis for a finding that it has not substantially prevailed for purposes of an award of attorney fees.").

## B.

The trial court in this case considered many of these factors. The court acknowledged that the timing of the District's production could support a finding

of causation, as it was "obviously not a coincidence" that the District produced documents on the day its opposition brief was due. But the court also noted that the District responded to the FOIA request five days after it was made and provided FOP with copies of the search requests it forwarded to MPD. This supports the court's conclusion that "[t]he District's efforts to comply were underway well before FOP filed this lawsuit." FOP relied heavily on the fact that the District did not adequately explain its failure to complete the search request within the statutorily mandated timeline, and the trial court in fact noted that it would have "prefer[red] to have an affidavit from the District explaining the timing of its efforts."[10] But even absent an affidavit from the District, the trial court inferred that the search request took substantial time to complete given the District's ultimate production—2,500 pages of emails plus a "voluminous" *Vaughn* index.[11] The trial court also took notice of several other Superior Court cases in which the District's "chronic inability" to comply with its legal obligations under FOIA was attributed to "the inadequacy of the resources allocated by the [D.C.] Council."

---

[10] FOP contends that the trial court required *it* to produce an affidavit about the District's timing, but the trial court's order implies that the District should have produced the affidavit.

[11] The District noted in its summary judgment brief "that the volume of the requested emails delayed the agency's response."

While an affidavit from the District detailing its search efforts would have been beneficial, *see Marschner,* 470 F. Supp. at 200 ("The agency is in a much better position to demonstrate that the delay was reasonable, and that the request would have been responded to within the same time even in the absence of the filing of this action."), the trial court's determination that FOP's suit was not causally related to the production of documents was not clearly erroneous. As the trial court noted, the District's delay—while unlawful—was not significantly different from "the average amount of time it takes the District to respond to FOIA requests." This particular request required "substantial effort" to sift through a large number of documents. And the District suffers from a "general backlog" of FOIA requests. Although as the trial court recognized, "[i]t is a close call," these facts provide sufficient support for the trial court's factual finding that FOP's suit did not cause the District's production of documents in this case.

**IV.**

For these reasons, the judgment of the Superior Court is affirmed.[12]

*So ordered.*

---

[12] Because we affirm the trial court's determination that FOP is not eligible for attorney's fees, we need not consider whether its alternative ruling that FOP is not entitled to fees was an abuse of discretion.